MARTIN FLYING SERVICE, INC., v. LAWRENCE MARTIN AND E. H. BROCKENBROUGH.

(Filed 13 December, 1950.)

**1. Trial § 23f—**

While nonsuit should be granted for a fatal variance, since such variance amounts to a failure of proof, where the variance is not such as will defeat recovery and the allegation is not such as to mislead defendant, as where an express contract is alleged and the proof tends to establish an implied agreement, nonsuit is properly refused.

**2. Pleadings § 24a—**

Where the difference between the allegation and proof is not substantial and could not mislead the other party, as where plaintiff declares on an express contract and seeks to recover on an implied agreement arising out of the same transaction, the variance is not fatal.

**3. Trial § 31b—**

The court is required to state the evidence to the extent necessary to explain the law applicable thereto and to give equal stress to the respective contentions of the parties, G.S. 1-180, as rewritten by Chap. 107, Session Laws of 1949.

**4. Same: Money Received § 4—Charge held for error in failing to explain law applicable to defendant's contention supported by evidence.**

Plaintiff sought to recover as for money had and received the amount paid by it to a bank on a note secured by a chattel mortgage on an airplane executed by defendants. Defendants contended that plaintiff leased defendants' plane for student training under an agreement to pay the bank installments on the mortgage note as they became due out of the sums received from student pilots for use of the plane. *Held:* An instruction in effect leaving the jury to answer the issue of indebtedness either nothing or the amount of the note paid by plaintiff must be held for reversible error in failing to submit to the jury the question of the amounts received by plaintiff from student pilots which, under defendants' contentions, should have been paid by plaintiff on the note under the rental agreement, leaving defendants liable only for the amounts paid by plaintiff on the note out of its corporate assets.

APPEAL by defendant Brockenbrough from *Phillips, J.,* July Term, 1950, of GASTON. New trial.

Plaintiff corporation instituted this action to recover of defendants money paid to their use and benefit, under mistake of facts.

There was verdict in favor of plaintiff for $2,792.40, and from judgment predicated thereon defendant Brockenbrough appealed.

*Bulwinkle & Howard for plaintiff, appellee.*

*Alvin A. London, J. C. Sedberry, and Robert G. Sanders for defendant Brockenbrough, appellant.*

DEVIN, J. The plaintiff based its action upon the allegation in its complaint that it had made payments to the Wachovia Bank & Trust Company at various times in 1947 and 1948 aggregating $2,792.40, which payments were credited on and used for the payment of a note of $3,193.32 secured by chattel mortgage which had been executed by the defendants and owed by them to the bank, and that the defendants had received this amount to their use and benefit and now refuse repayment.

Defendants denied the material allegations of the complaint, and further alleged that the defendants owned a Cessna Twin Engine Airplane on which was due $3,193.32, evidenced by note and chattel mortgage to the bank in that amount, payable in monthly installments of $266.11; that the plaintiff corporation, or a partnership under the same name which it took over, had leased the airplane for use in its flying school under agreement to pay as rental therefor the installments due on defendants' note, and that the payments to the bank were made pursuant to this agreement.

From the evidence offered, taking it up in chronological sequence, it appeared that in 1946 defendant Martin and E. B. Robinson entered into a partnership agreement to engage in the business of operating airports, training airplane pilots, and selling, servicing and operating airplanes under the name of Martin's Flying Service, Martin to own two-thirds of the business, assets and profits, and Robinson one-third. On 3 February, 1947, defendant Martin and defendant Brockenbrough became joint owners of the airplane described and executed to the bank note and chattel mortgage thereon in the sum of $3,193.32.

On 14 October, 1947, defendant Martin conveyed his two-thirds interest in the partnership to E. B. Robinson, making Robinson sole owner. The bill of sale for this transaction recited the inclusion in the sale of all shop and office equipment, airplanes, veterans' school supplies, accounts, contracts and all other personal property owned and used in connection with the operation of the business under the name of Martin Flying Service. As part consideration for the conveyance Robinson agreed to assume and pay all notes, accounts and other liabilities due or to become due by Martin Flying Service.

Apparently about this date Martin Flying Service, Inc., which theretofore had been incorporated, took over and continued to operate the business, with E. B. Robinson as President.

Thereafter on 4 December, 1947, E. B. Robinson and defendant Brockenbrough executed a note to the bank in the sum of $825 secured by lien on the Cessna plane, the note payable in monthly installments of $137.65. This note was paid one-half by Robinson and one-half by defendant Brockenbrough, each paying monthly $68.82, and the note was marked paid July, 1948. Defendant Brockenbrough testified this note was given

to "refinance" the balance then due on the $3,193 note. The $3,193 note was marked paid 21 January, 1948.

E. B. Robinson testified he paid all of the $3,193 note except about $400 paid by Brockenbrough as above shown, and that this money paid off and discharged the note and chattel mortgage of the defendants; that he made those payments under the mistaken belief that the bill of sale from defendant Martin included Martin's half interest in the plane, and that the note to the bank was a liability of Martin's Flying Service which he had agreed to assume, but that defendants denied he had any right to the plane and removed it from the flying field.

In the itemized statement of payments to the bank attached to the complaint appear two payments of $266.11, 18 October and 28 November, 1947, and $532.22, 17 November, 1947. Apparently this accounts for four monthly installments on the $3,193 note. There also appear the six monthly payments of $68.82—$412.93—paid by Robinson on the $825 note. The last item on this statement is the undated item of $1,315.03, which added to the other items mentioned makes the total of $2,792.40, the amount plaintiff is suing for in this action.

On behalf of the defendants it was testified by defendant Martin that he purchased one-half interest in the Cessna plane with his own money; that Robinson declined to buy; that the plane was brought to the field of Martin's Flying Service and leased to the Government for the training of students at $35 an hour, the net profits to be divided between him and Brockenbrough, and that payments on the plane were made out of these rentals. Martin also testified that at the time he sold his interest to Robinson the books showed Brockenbrough was due something over $400, and that the Government owed for flying time. The plane was not included in the bill of sale. Brockenbrough did not remove the plane until July, 1948. Another witness, who had been Vice-President of plaintiff corporation and chief pilot, testified the plane was used after Martin sold his interest; that 15 or 20 students were trained requiring minimum of 20 hours each at $35, and that the money was paid to Martin Flying Service, Inc. In addition defendant Brockenbrough testified that the plane was used by Martin's Flying Service on a rental basis, the net amount after paying expenses to be paid to the bank; that after Martin sold his interest Robinson for the plaintiff agreed to continue the arrangement; that he, Brockenbrough, then asked for the amount due him on past transactions and was told the books had not been audited; that he has never received anything for the use of his plane; that the note of $825 executed 4 December, 1947, was to refinance the balance then due on the $3,193 note. At that time Robinson did not state he had paid out any money for the defendants. Witness also testified that with a representative of the bank he went to see Robinson; that Robinson had been

advised if he wished to use the plane to complete student training, payments on the plane must be brought up-to-date; that rather than have the bank repossess the plane. it was agreed that Robinson and Brockenbrough should sign the $825 note, each paying half of the amount owing; that the payments of $532.22 and $266.11 made in November, 1947, were given to bring the payments up-to-date.

Defendants contended that plaintiff's president was• well aware that the plane belonged to the defendants, and that it was being used on a rental basis, payments therefor to be made to the bank as credits on defendants' note; and further that plaintiff's evidence as to an undated item of $1,315, for which he now claims repayment from defendants, was vague and indefinite; that this item should be considered in connection with the evidence that the balance on the note of $3,193 was settled by the note of 4 December, 1947, and that the item now claimed should be rejected.

Defendant Brockenbrough assigns as error the denial of his motion for judgment of nonsuit on the ground that in the complaint it was alleged that the payments to the Wachovia Bank & Trust Co. for the benefit of defendants were made "under an express contract," whereas the proof as to appellant tended to show only an implied contract to repay money had and received to the use and benefit of the defendants—one of the common counts in *assumpsit*. . The motion was properly denied. The rule is established that evidence of material matters not alleged will not be received or avail against a motion to nonsuit (*Whichard v. Lipe*, 221 N.C. 53, 19 S.E. 2d 14), but the variance here cannot be held fatal. *Brown v. Tel. Co.*, 169 N.C. 509, 86 S.E. 290; *Oates v. Kendall*, 67 N.C. 241; G.S. 1-168; G.S. 1-169. One may sue on an express contract and recover on an implied contract (*Wittkowski v. Harris*, 64 F. 712) unless the allegation is such as to mislead the defendant. The rule is stated by *Justice Walker* in delivering the opinion of the Court in *Talley v. Granite Quarries Co.*, 174 N.C. 445, 93 S.E. 995: "When the difference between the allegation of the pleading and proof is substantial, so that the other party is grossly misled by it, and it really amounts to alleging one cause of action and proving another, it is not a variance merely, but a failure of proof." To the same effect is the holding in *Whichard v. Lipe, supra*. The appellant in the case at bar was in nowise misled.

The appellant Brockenbrough also assigns error in that the court did not call to the attention of the jury material contentions of the defendants, nor explain the law arising on the evidence offered on their behalf as required by G.S. 1-180. An examination of the Judge's charge in connection with the evidence hereinbefore set out at some length leads us to the conclusion that the appellant's assignment of error in this respect is well-founded.

G.S. 1-180, as rewritten by Chapter 107, Session Laws 1949, requires the trial judge to "declare and explain the law arising on the evidence given in the case." He is not required to state the evidence, "except to the extent necessary to explain the application of the law thereto." This would seem to require that the Judge in explaining the law to the jury should state the evidence from which the questions of law arise, and the rules of law applicable to those facts. He must also "give equal stress to the contentions" of the parties. *S. v. Ardrey,* 232 N.C. 721; *Grant v. Bartlett,* 230 N.C. 658, 55 S.E. 2d 196; *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484.

According to the record before us the Judge charged the jury in substance that if the plaintiff made the payments to the bank believing it owed the amounts so paid as debts of the Flying Service which it had assumed, and that the defendants received the benefit of these payments in the settlement and discharge of their note and chattel mortgage, plaintiff would be entitled to recover of defendants the amounts so paid. But that if the plane belonged to the defendants and there was an agreement that the plane be used to pay off the debt due the bank, and the plane was used by plaintiff a sufficient time to pay off the debt, and it was paid off by that method, the answer to the issue would be "nothing."

Without additional instruction the court stated briefly the contentions of the parties as to the issue submitted. In doing so the court stated the defendants' contention that they owned the entire interest in the plane, and that they had an agreement with plaintiff for its use in training students for the Government, the payments therefor to be applied to the payment of the note and chattel mortgage in the bank; and that the plane was so used, and that money paid to the bank was derived from use of the plane and did not come from assets of the corporation. And further that although plaintiff's witness testified he paid $2,792 on this note the checks offered do not aggregate more than $1,400. The court then stated the contrary contention of plaintiff "that the plaintiff insists and contends even though he has not offered all the checks to substantiate it, the defendants admit the difference that's what was paid after the corporation took over the affairs of the partnership; the plaintiff says and contends that would be the difference that was paid by the corporation to the bank, which would be all except the amount Brockenbrough paid, which would be $2,792.40."

The defendant Brockenbrough contends that the evidence which he offered raised the question whether there was an agreement on the part of the plaintiff, or to which he assented, for the rental of the defendants' airplane for student training at a lucrative price, and, if so, how long was the plane so used by plaintiff and what amount was derived from that source for which the appealing defendant was entitled to credit;

and as a corollary what amounts were actually paid by plaintiff corporation from its assets to the bank on defendants' note. He contends the impression was given the jury that they must answer the issue "$2792.40," or "nothing," without submitting to the jury some intermediate ground, as warranted by the evidence, upon which to rest a verdict. *Davis v. Morgan,* 228 N.C. 78 (82), 44 S.E. 2d 448. He complains that the evidence relating to these matters and the law arising therein were not sufficiently stated to the jury.

The credibility of the witnesses and the weight to be given their testimony were matters for the jury. Without expressing any opinion thereon, we have stated the evidence only for the purpose of noting the questions of law relating thereto and arising thereon, and to determine if appellant's assignments of error as to the court's instruction to the jury are of sufficient merit to warrant a new trial. On the record we think there should be another hearing.

There were other exceptions noted at the trial and brought forward in defendants' assignments of error, but it is unnecessary to consider them as they may not arise on another trial.

New trial.