CITIZENS NATIONAL BANK, ADMINISTRATOR OF THE ESTATE OF H. T. HELMS, v. WALTER EVERETTE PHILLIPS, JR.

(Filed 19 November, 1952.)

**1. Automobiles § 16—**

A pedestrian crossing a street between intersections where no traffic control signals are maintained and at a place where there is no marked cross-walk is under duty to yield the right of way to vehicles. G.S. 20-174 (a).

**2. Same—**

A motorist is under duty to exercise due care to avoid colliding with a pedestrian notwithstanding the failure of such pedestrian to yield the right of way as required by statute. G.S. 20-174 (e).

**3. Same—**

The failure of a pedestrian to yield the right of way as required by G.S. 20-174 (a) is not contributory negligence *per se*, but is evidence to be considered with other evidence in the case upon the issue.

**4. Automobiles § 18h (2)—**

The evidence tended to show that defendant driver attempted to pass a car preceding him in the same direction, and that as he was drawing abreast of the car he saw a pedestrian walking away from him diagonally across the street, that he put on his brakes, but hit the pedestrian at a point ten feet from the left curb. *Held:* The evidence was sufficient to be submitted to the jury upon the issue of defendant's negligence.

**5. Automobiles § 18h (3)—Evidence held not to show contributory negligence as matter of law on part of pedestrian in failing to yield right of way.**

The evidence tended to show that deceased was walking diagonally across a street between intersections not having traffic control signals, at a place where there was no marked cross-walk; that deceased had passed the center of the highway and was at a point ten feet from the curb when he was struck from behind by a car traveling on its left of the thirty-five foot wide street to pass another vehicle traveling in the same direction.

There was evidence that deceased did not look in the direction from which the car approached.  *Held:* Nonsuit on the ground of contributory negligence was properly denied, since deceased's failure to yield the right of way was not contributory negligence *per se* and the question of proximate cause is for the determination of the jury.

**6. Trial § 31b—**

The trial judge is required to declare and explain the law as it relates to the various aspects of the evidence offered bearing on all substantive phases of the case.  G.S. 1-180.

**7. Same—**

Ordinarily, general definitions and abstract explanations of the principles of law involved together with the summation of the evidence and a statement of the contentions on each side is not sufficient, but the trial court must declare the law of the case and apply it to the different phases of the evidence.

**8. Automobiles § 18i—**

Ordinarily, and except in cases of manifest factual simplicity, the rule is that it is not sufficient for the court merely to read a highway safety statute and leave the jury unaided to apply the law to the facts.

**9. Trial § 31b—**

An instruction about a material matter not based on sufficient evidence is erroneous.

APPEAL by defendant from *Clement, J.*, and a jury, June Term, 1952, of CABARRUS.

Civil action by plaintiff to recover damages for the alleged wrongful death of its intestate, who as a pedestrian on S. Union Street in the City of Concord was struck by an automobile driven by the defendant.

The defendant's motion for judgment as of nonsuit, first made when plaintiff rested its case and renewed at the conclusion of all the evidence, was overruled, after which issues of negligence, contributory negligence, and damages were submitted to the jury.  The issues of negligence and contributory negligence were answered in favor of the plaintiff, and the jury awarded the plaintiff damages in the amount of $12,900.  Judgment in that amount was entered in favor of the plaintiff.

From judgment so entered, the defendant appealed, assigning errors.

*John Hugh Williams for plaintiff, appellee.*

*Smathers & Carpenter, Lewis B. Carpenter, and Hartsell & Hartsell for defendant, appellant.*

JOHNSON, J.  The defendant's exceptions relate (1) to the refusal of the trial court to allow the motion for judgment as of nonsuit and (2) to the charge of the court.

---

---

1. *The refusal to nonsuit.*—These in substance are the material facts developed by the evidence: Plaintiff's intestate, H. T. Helms, age 62, was struck on the morning of 6 December, 1950, at about 6:30 o'clock, while it was still dark. He was in the act of crossing from the east side of S. Union Street to the west side at a point a short distance north of the intersection of Hillcrest Drive with S. Union Street. Hillcrest Drive exists only on one side of S. Union Street and joins it on the south side. S. Union Street is a link in U. S. 29-A and N. C. 601 and 151, and is one of the more heavily traveled streets and arterial highways in the City of Concord. The street runs generally north and south. It is straight for two-fifths of a mile north of the scene of the collision and for over a block to the south. It is 35 feet and 7 inches wide from curb to curb, and is paved with black asphalt. The center of the street is marked with a broken, intermittent, white painted line.

Immediately prior to the impact three automobiles were traveling in a northerly direction on the east side of S. Union Street. The first was operated by A. L. Mauney, the second by J. A. Bangle, and the third by the defendant Phillips. The headlights on all three cars were burning. There was no oncoming traffic in sight on the west side of S. Union Street. It was in a residential district, and no cars were parked on the east side of this street. There was no marked cross-walk at or near the place where the intestate was crossing the street.

Bangle overtook and passed the Mauney car at or near the intersection of Hillcrest Drive. Then the defendant Phillips, after passing the intersection of Hillcrest Drive, undertook to pass the Mauney car. In doing so, the defendant pulled widely to the left, speeded up to a position about abreast the Mauney car, and then it was that the intestate was struck by the front of the defendant's car.

The point of impact, pointed out to the officers by the defendant—also indicated by blood stains on the pavement and broken headlight glass— was 94½ feet from the intersection of Hillcrest Drive and within the two lines of skid marks made by the defendant's car. The east mark, made by the right set of the defendant's car wheels, was 5 feet west of the center line of the street. The west mark, made by the left set of the defendant's car wheels, was about 8 feet from the west curb. The west mark was 46 feet long and the east mark 40 feet long. The point of impact, within these skid marks, was about 10 feet south of the north ends thereof. The body of intestate came to rest on the west side of S. Union Street, with his head against the curb at a driveway approximately 24 feet from the point of impact and 118½ feet from the intersection of Hillcrest Drive. The defendant's automobile came to a stop a short distance from the body (exact distance not given) and 9 feet and 7 inches from the west curb.

A street light was over the intersection of S. Union Street and Hillcrest Drive. There was also a street light on the west side of S. Union Street about 50 feet north of the point of impact. However, there is no evidence as to the extent of illumination which these lights afforded.

J. A. Bangle, who was driving the second car, testified that as he approached Hillcrest Drive he started to pass the Mauney car. "I started around Mauney right about the intersection. . . . It was at that time that I saw Helms. . . . he was not quite in the center of the road. He was about 2 feet from the white line, and I slowed down to give him time enough to get across the white line. . . . He continued across the street at a 45 degree angle at just a moderate gait. He was looking the other way, in more or less a 45 degree angle. . . . I'd say he was probably about 50 feet north of Hillcrest Drive; . . . I didn't see him come out from in front of the Mauney car. When I saw him he was about 2 feet on the right side of the white line; at that time I had started around Mauney; at that time I'd say I was about 30 feet, . . . away from the Mauney car. . . . I slowed up, I pulled to the right a little to miss Helms. Then after I passed him, I passed the Mauney car. I passed Helms about the same time I passed Mauney." Then after traveling 50 or 75 feet, "that's when I heard the brakes" (of the Phillips car in the collision). Bangle testified he was traveling about 30 or 35 miles per hour, and that he "never did cross the center line," though he got pretty close to the center line when passing and pulling to the right to keep from hitting Helms. He also said he pulled to the right to keep from riding the center line.

A. L. Mauney, who was driving the front car, testified: "Just after I passed Hillcrest, somewhere along there, Bangle's car passed me. . . . It pulled off to my left on the west side of the street to pass. . . . He passed just before the wreck. . . . It seemed like it pulled back to the right half of the street pretty quick after it passed me. . . . The Phillips car was behind the Bangle car. . . . Phillips was even with me when he hit Helms. . . . I do not have an opinion as to how fast he was driving. I do not think he was driving fast. . . . I was going I would say 20 or 25. I could have been making 30, he was not going fast. . . . I heard a racket. I didn't know what. I thought somebody hit another car and I pulled over and stopped and went back. I didn't see Helms before he was hit. . . . The Phillips car was 3 or 4 car lengths behind the Bangle car."

J. B. Eudy, a passenger in the Mauney car, who was sitting on the left side of the back seat, said the Mauney car was going not over 20 or 30 miles an hour; that he did not see Helms before he was hit; that the Phillips car was just back of the Bangle car. This witness further testified: "I didn't see the Phillips car when it struck Helms. . . . I heard the bump and looked and just saw a flurr. . . . When I heard the bump

it was . . . about even with where Mauney was sitting in the driver's seat. I hadn't seen Helms at all."

Other occupants of the Mauney car also testified they did not see Helms before he was hit.

The defendant, testifying as a witness in his own behalf, said in substance that he was driving about 30 miles per hour behind the Bangle car which pulled out and passed the Mauney car, and after the Bangle car got back in line, he (the defendant) then pulled out to pass and, as he put it: "just as I got up, I guess even with the door of Mauney's car, I saw Helms. At that time Helms was right close to the white line on the west side of S. Union Street. . . . It looked to me as if he was walking straight up the street, going north, parallel with the white line. . . . At the time I first saw Mr. Helms I was driving around 30 miles an hour. I put on brakes as soon as I saw him. I did not change the direction of my car either to the east or the west. I was not able to stop my car before my car and Mr. Helms collided. . . . I would say my car traveled about 15 or 20 feet after the collision. . . . The Mauney car was in the center of the east side of the highway . . . As to how far to the left the Bangle car had to turn to pass the Mauney car, he had all four wheels across the white line on the west side of S. Union Street. . . . He (Bangle) pulled back sharp to the right. . . . At the time the Bangle car passed the Mauney car I was driving on the east side of the street. After the Bangle car passed the Mauney car I pulled up to the left to pass the Mauney car. . . . I crossed the center line. . . . The Mauney car was in the middle of the right lane." Cross-examination: "There probably was better than a car's width between me and the Mauney car. As to why it was necessary that I swing over that far, it was because I always pass like that. It is not a fact that I was just behind the Bangle car and started to pass both of them at the same time. I said the Bangle car was in front of Mauney. I would say he was four car lengths ahead of him when I started to pass. . . . It took me a little while to swing out. . . . I was not going considerably faster than the Mauney car. . . . I imagine he was going between 25 and 30. . . . I had to be going faster to pass him. It took me some little distance to begin to pass him, to get up even with him. . . . I didn't see Mr. Helms some 50 feet or more before I hit him. I said the brake marks were some 46 feet, one of them. I believe it measured 24 feet that Mr. Helms was knocked from where this occurred. My car was behind the body. . . . It was knocked beyond where I stopped. Those marks (skid marks) were straight, and I did not change the course of my direction. There was not anything as I know of to prevent me from turning to the left or to the right at the point to avoid Mr. Helms. . . . Those marks extended . . . 15 or 20 feet north of the point of impact."

The defendant contends that judgment as of nonsuit should have been entered below either upon the ground (1) that the plaintiff failed to make out a *prima facie* case of actionable negligence against the defendant, or (2) for that the plaintiff's evidence reveals the intestate was contributorily negligent as a matter of law.

For the purpose of this appeal both phases of the defendant's contention may be resolved by testing the evidence by the rule of the reasonably prudent man (*Meacham v. Railroad,* 213 N.C. 609, p. 612, 197 S.E. 189), as applied in the light of the correlative duties imposed upon both the defendant and the intestate by the provisions of these portions of G.S. 20-174: "(a) Every pedestrian crossing a roadway at any point other than within a marked cross-walk or within an unmarked cross-walk at an intersection shall yield the right-of-way to all vehicles upon the roadway. . . . (e) Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, . . ."

Here, the evidence discloses that the intestate was crossing the street diagonally within the block, at a point which was neither at an intersection nor within a marked cross-walk, and the evidence discloses no traffic control signals at the adjacent intersections. Therefore, under the provisions of G.S. 20-174 (a) it was intestate's duty to "yield the right-of-way to all vehicles upon the roadway."

If it be conceded that the intestate failed to yield the right of way as required by this statute, even so, it was the duty of the defendant, both at common law and under the express provisions of G.S. 20-174 (e), to "exercise due care to avoid colliding with" the intestate. And the evidence adduced below was sufficient, we think, to justify, though not necessarily to impel, a jury-finding of actionable negligence against the defendant.

Nor may the evidence tending to show that intestate failed to yield the right of way as required by G.S. 20-174 (a) be treated on this record as amounting to contributory negligence as a matter of law, particularly so in view of the testimony to the effect that intestate at the time he was struck had reached a point about 10 feet from the west curb of the street. Our decisions hold that a failure so to yield the right of way is not contributory negligence *per se,* but rather that it is evidence of negligence to be considered with other evidence in the case in determining whether the actor is chargeable with negligence which proximately caused or contributed to his injury. *Templeton v. Kelley,* 215 N.C. 577, 2 S.E. 2d 696; *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484. See also *Sebastian v. Motor Lines,* 213 N.C. 770, 197 S.E. 539; *Marsh v. Byrd,* 214 N.C. 669, 200 S.E. 389; *Stephens v. Johnson,* 215 N.C. 133, 1 S.E. 2d 367; Annotations: 14 A.L.R. 1176, p. 1197 *et seq.;* 67 A.L.R. 313, p. 333 *et seq.*

Here, upon consideration of the entire record, we think the evidence tending to show that intestate failed to yield the right of way as required by statute, together with the evidence relating to the question of proximate cause, was for the jury. *Marsh v. Byrd, supra.*

It is not perceived that the conclusion here reached is at variance with the decision in *Gaskins v. Kelly,* 228 N.C. 697, 47 S.E. 2d 34, cited and relied on by the defendant.

It follows from what we have said that the motion for judgment as of nonsuit was properly overruled.

2. *The charge of the court.*—The defendant urges that the court committed prejudicial errors in failing to comply with G.S. 1-180 as rewritten, Chapter 107, Session Laws of 1949, which provides in part that the trial court shall "declare and explain the law arising on the evidence given in the case." This statute further provides that the trial judge "shall not be required to state such evidence except to the extent necessary to explain the application of the law thereto; . . ."

Implicit in the meaning of this statute as interpreted by numerous decisions of this Court is the requirement that the judge must declare and explain the law as it relates to the various aspects of the evidence offered bearing on all substantive phases of the case. *Chambers v. Allen,* 233 N.C. 195, 63 S.E. 2d 212; *Lewis v. Watson, supra; Smith v. Kappas,* 219 N.C. 850, 15 S.E. 2d 375; *Ryals v. Contracting Co.,* 219 N.C. 479, 14 S.E. 2d 531; *Mack v. Marshall Field & Co.,* 218 N.C. 697, 12 S.E. 2d 235. The requirement is that the judge must declare and explain the law and apply it to the various aspects of the evidence offered. *Smith v. Kappas, supra.* The statute requires the judge to point out the essentials to be proved on the one side or the other, and to bring into focus the relations of the different phases of the evidence to the particular issues involved. *Lewis v. Watson, supra.*

In *Bowen v. Schnibben,* 184 N.C. 248, 114 S.E. 170, it is stated: ". . . where a statute appertaining to the matters in controversy provides that certain acts of omission or commission shall or shall not constitute negligence, it is incumbent upon the judge to apply to the various aspects of the evidence such principles of the law of negligence as may be prescribed by statute, as well as those which are established by the common law. *Orvis v. Holt,* 173 N.C. 233; *Matthews v. Myatt,* 172 N.C. 232."

Ordinarily, and except in cases of manifest factual simplicity, the rule is that it is not sufficient for the court merely to read a highway safety statute and leave the jury unaided to apply the law to the facts. *Chambers v. Allen, supra; Lewis v. Watson, supra.*

In this case it is noted that the court, before directing the jury's attention to any of the highway safety statutes, completed its preliminary charge covering all three issues. This included (1) general definitions

and abstract explanations of the essential elements of actionable negligence; (2) summation of the evidence; (3) reading of each issue, after which (4) followed a statement of contentions of each side. But nowhere in connection with the summation of the evidence or statement of contentions did the court attempt to declare the law of the case and apply it to the different phases of the evidence.

Then, after finishing this preliminary charge on all three issues, the court adverted to the first two issues—those dealing with negligence and contributory negligence—and read *verbatim*, without comment or explanation between them, G.S. 20-149 (a) and G.S. 20-150 (a), after which the court gave only the contentions of the parties with respect to the application of these two statutes. The court then read G.S. 20-174 (a), (c), and (d). This was followed by a summation of contentions of the parties respecting the application of these statutory provisions, without explanation or attempt on the part of the court to apply or correlate the different sections of the statute to the different phases of the evidence.

It thus appears that the court failed to comply with the mandatory provisions of G.S. 1-180 as rewritten, *Chambers v. Allen, supra,* and a study of the record impels the view that the failure so to comply was prejudicial error entitling the defendant to another hearing.

Since the case goes back for retrial, we deem it proper to refrain from further elaboration. Suffice it to say, that upon the record as here presented it would seem that G.S. 20-174 (c) was inapplicable to the evidence in the case, and as to G.S. 20-149 (a) and G.S. 20-150 (a), each was applicable only in a limited manner. It also appears that the theory of the case excludes the application of G.S. 20-174 (d). See pleadings of both parties. It is an established rule of trial procedure with us that an instruction about a material matter not based on sufficient evidence is erroneous. *Childress v. Motor Lines,* 235 N.C. 522, top p. 530, 70 S.E. 2d 558, and cases there cited.

New trial.