STATE OF NORTH CAROLINA v. LEE ISAAC BLUE

No. COA00-235

(Filed 15 May 2001)

**Homicide— manslaughter—defense of home—porch as part of home**

There was no error in a prosecution for voluntary manslaughter in the court's instruction on the curtilage of defendant's home where defendant contended that the court erred by failing to instruct the jury that the front porch was part of defendant's home and thus included in the right to self-defense under N.C.G.S. § 14-51.1. The jury was instructed that defendant's actions are excused if death occurred while he was preventing forcible entry and, when the jury asked whether the front porch was part of the home or inside the home, the court replied that a front porch "is a part of the home" and "is not inside the home." This instruction is sufficient read in context.

Judge HUNTER dissenting.

Appeal by defendant from judgment entered 16 September 1999 by Judge B. Craig Ellis in Forsyth County Superior Court. Heard in the Court of Appeals 19 February 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General James P. Longest, Jr., for the State.*

*Donald K. Tisdale, Sr., for defendant-appellant.*

EAGLES, Chief Judge.

Defendant appeals from judgment entered 16 September 1999 based on the jury's verdict finding him guilty of voluntary manslaughter. Defendant contends that the trial court erred in its charge to the jury concerning the curtilage of defendant's home. We disagree.

The evidence tended to show the following: On 10 July 1998 James Hilton came to defendant's home in search of Deirdre Schuler, a prostitute. Ms. Schuler lived next door to defendant. Hilton, who seemed intoxicated, began yelling Schuler's name, after which a fight ensued between Hilton and defendant on defendant's porch. During the tussle, defendant pulled out a knife. The two fell over the porch bannister onto the grass. At some point Hilton was fatally stabbed.

Defendant testified that a few days earlier, Hilton had told defendant that Hilton was going to "blow [defendant's] head off." Ms. Schuler testified that defendant started the fight by hitting Hilton on the head. Another witness, Mr. Spencer Lee Wilson, testified that the fight started when Hilton attempted to forcibly enter defendant's home and defendant struck him. Dr. Patrick Lantz, the forensic pathologist who performed the autopsy, testified that the fatal stab wound was not consistent with a fall. Defendant was charged with second degree murder and convicted of voluntary manslaughter.

At the charge conference, defendant requested that the jury be instructed on self-defense. Defendant further requested that the court give a special instruction on defendant's right to defend himself pursuant to G.S. § 14-51.1. The trial court agreed to give the instructions and twice instructed on self-defense as follows:

> If the defendant was not the aggressor and he was on his own premises, he could stand his ground and repel force with force regardless of the character of the assault made upon him; however, the defendant would not be excused if he used excessive force.

Further the trial court stated:

> If the defendant killed the victim to prevent forcible entry into his place of residence or to terminate the intruder's unlawful entry, the defendant's actions are excused and he is not guilty. The State has the burden of proving from the evidence beyond a reasonable doubt that the defendant did not act in a lawful defense of his home.

> The defendant was justified in using deadly force if, (1) such force was being used to prevent a forcible entry into the defendant's place of residence; and (2) the defendant reasonably believed that the intruder might kill or inflict serious bodily harm to the defendant or others in the place of residence; and (3) the defendant reasonably believed that the degree of force he used was necessary to prevent a forcible entry into his place of residence.

> A lawful occupant within a place of residence does not have the duty to retreat from an intruder in these circumstances. It is for you, the jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to the defendant at the time.

After instructing the jury the trial court inquired of counsel as to whether "there [were] any requests for additions or corrections to the charge." Neither party made requests. During the jury's deliberations, it asked whether the front porch was "a part of the home or inside the home." The trial court allowed argument by the parties, and instructed the jury that the "front porch is a part of the home," and "a front porch is not inside the home."

Defendant argues that the trial court committed prejudicial error when it failed to instruct the jury that the front porch was part of the home's curtilage and thus covered under G.S. § 14-51.1. Because we believe the substance of the instructions read in context was clear, we disagree.

Defendant does have a right to "stand his ground" to prevent an intruder from entering.

> (a) A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.

> (b) A lawful occupant within a home or other place of residence does not have a duty to retreat from an intruder in the circumstances described in this section.

> (c) This section is not intended to repeal, expand, or limit any other defense that may exist under the common law.

G.S. § 14-51.1 (Reg. Sess., 1994). The trial court's instruction was substantially similar to this statute. This Court has held that "[a]n inaccuracy in the [jury] instruction will not be held prejudicial error when it is apparent from the charge, construed contextually, that the jury could not have been misled." *State v. Lankford*, 31 N.C. App. 13, 17, 228 S.E.2d 641, 644 (1976); *Houston v. Rivens*, 22 N.C. App. 423, 427, 206 S.E.2d 739, 742 (1974). We believe that when the trial court instructed the jury that "[i]f the defendant killed the victim to prevent forcible entry into his place of residence or to terminate the intruder's unlawful entry, the defendant's actions are excused and he is not guilty," the substance of the law of curtilage was given. The jury

was instructed that if death occurred while the defendant was **preventing forcible entry**, the defendant's **actions are excused.** Additionally, the trial court instructed the jury that

> [i]f the defendant was not the aggressor and he was on his own premises, he could stand his ground and repel force with force regardless of the character of the assault made upon him; however, the defendant would not be excused if he used excessive force.

Thus, the instruction included the curtilage in the area within which a defendant has the right to "stand his ground."

The defendant argues that the question raised by the jury required further explanation. The jury asked whether the front porch was "a part of the home or inside the home." The trial court replied that the "front porch is a part of the home," and "a front porch is not inside the home." When read in context this instruction is sufficient.

Defendant argues that there is no duty to retreat from attacks made within the curtilage of the home. *State v. Frizzelle*, 243 N.C. 49, 51, 89 S.E.2d 725, 726 (1955). "[C]urtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings." *Id.*

Defense argues that the gist of the jury's question is whether the privilege not to retreat extends to the front porch. The trial court instructed the jury that when a person is on his own *premises* he has no duty to retreat. Always, a person has the right to use only the force necessary so as to "overcome the assault and secure himself from all harm." G.S. § 14-51.1; *State v. Johnson*, 261 N.C. 727, 729, 136 S.E.2d 84, 86 (1964). Since there was no instruction stating a circumstance where this defendant (a) had a duty to retreat or (b) was authorized to use force other that what was reasonably necessary to repel the assault, on this record we hold that further clarification was unnecessary.

Accordingly we conclude that in the trial there was

No error.

Judge CAMPBELL concurs.

Judge HUNTER dissents.

HUNTER, Judge, dissenting.

The majority rests its opinion on the fact that the trial court "twice instructed on self defense" in that it instructed the jury that if defendant was on his own *premises* and was preventing forcible *entry into his place of residence,* then defendant had a right to defend himself pursuant to N.C. Gen. Stat. § 14-51.1. I agree that this is a correct statement of the law; however, because the trial court—at no time—explained the legal perimeters of one's home or mentioned defendant's right to defend himself within the curtilage of his home, I am of the opinion that the majority has effectively removed from the jury's consideration defendant's right to defend himself on the porch of his home. Therefore, I respectfully dissent.

There can be no dispute, our Supreme Court having stated that a "jury, being laymen, [often is] not [] so apt to see the connection between the principles of law laid down and the facts in [a] case which so clearly appears to an experienced lawyer or judge." *Smith v. Bus Co.,* 216 N.C. 22, 23, 3 S.E.2d 362, 363 (1939). However, the majority states that: "Because we believe the substance of the [jury] instructions read in context was clear," defendant was not prejudiced by the trial court's failure to explain "curtilage" to the jury. I must disagree.

Having looked in two separate extensive dictionaries (The American Heritage College Dictionary, 3rd Ed., Houghton Mifflin Co., and; Webster's II New Riverside Dictionary, Revised, Houghton Mifflin Co.), the word "curtilage" cannot be found. Instead, "curtilage" is a legal term, *"the meaning of which term **in law is**, a piece of ground, either enclosed or not, that is commonly used with the dwelling-house." State v. Twitty,* 2 N.C. 102, 102 (1794) (emphasis added). Thus, I believe—under the circumstances of this case—that the "evidence should have been considered [by the trial court] and the [trial] court should have *declared **and explained** the law arising on* th[e] evidence in its instruction to the jury . . . ." *State v. Greenidge,* 102 N.C. App. 447, 452, 402 S.E.2d 639, 642 (1991) (emphasis added). Specifically, the trial court should have explained to the jury that defendant was just as entitled to "stand his ground" and defend himself (pursuant to the statutory provisions) on his front porch, as he was to do so in his home.

It is clear from the trial court's own statements that it gave the N.C. Gen. Stat. § 14-51.1 jury instruction because the evidence presented at trial would support the jury's finding that defendant acted

pursuant to the statute's self defense provisions. However, later, during its deliberations, the jury sent a note inquiring, "[i]s the front porch considered to be a part of the home or inside of the home?" Following discussion between the trial court and counsel for both sides, and noting defendant's exception to its ruling, the trial court instructed the jury that "a front porch is a part of the home but a front porch is not inside the home." I believe, once the jury inquired particularly about whether the porch was part of the home, the trial court had an obligation (pursuant to defendant's request) to *clearly explain* that the porch, although not "within" the home, was part of the curtilage of the home and as such, was covered under the statute.

Moreover, I do not agree with the majority's apparent rationale that because the trial court used the word "premises," the jury knew and understood that the privilege included the porch, extending beyond the "within" or "inside" or "into" the home language as stated in both the statute and the trial court's instructions. Thus, I believe that, without further instruction from the trial court, the jury—as laymen—most likely understood the law to require defendant to retreat while on the porch of his home, and did not remove that duty until defendant was defending himself *inside* his home. Therefore, in light of the jury's query to that effect, and the trial court's obvious agreement that the evidence could support such a finding, I would hold that the trial court's response to the jury's query regarding the porch was prejudicial to defendant because it did not clarify that the porch was part of the curtilage of the home and thus, was covered under N.C. Gen. Stat. § 14-51.1's self defense provisions.

"It is the duty of the court to instruct the jury on all substantial features of the case arising on the evidence, . . . and the court's failure to do so will be held for error." (citing cases) "The statute, G.S. 1-180, makes it incumbent on the trial judge to declare and explain the law arising on the evidence given in the case." *Finch v. Ward*, 238 N.C. 290, 77 S.E.2d 661.

"Implicit in the meaning of this statute (G.S. 1-180) as interpreted by numerous decisions of this Court is the requirement that the judge must declare and explain the law as it relates to the various aspects of the evidence . . . in the case." *Bank v. Phillips*, 236 N.C. 470, 73 S.E.2d 323[, 327]. "It is the duty of the court to state the evidence to the extent necessary and to declare and explain the law as it relates to the pertinent aspects of the testi-

mony offered [citing cases] and *the duty of the court to **declare
and explain** the law arising on such evidence remains
unchanged by the present provisions of G.S. 1-180." Chambers v.
Allen*, 233 N.C. 195, 63 S.E.2d 212[, 214] . . . .

[In the present case t]he confusion in the minds of the jurors
probably arose with respect to the application of the law to the
facts. The evidence [of the victim's tussle with defendant on his
porch] was not in dispute. When the court, therefore, charged
again as to the law it was its duty to do more than read from the
book. . . .

*Ammons v. Insurance Co.*, 245 N.C. 655, 657-58, 97 S.E.2d 251,
252-53 (1957) (emphasis added).

In the present case:

Defendant's requested instruction concerned a subordinate fea-
ture of the case since it did not relate to elements of the crime
itself nor to defendant's criminal responsibility therefore. Absent
defendant's request, the jury instructions would have been
entirely proper since a Court is not required to give instructions
on subordinate features of a case. *When a requested instruction,
however, is correct in law and supported by the evidence, the
Court must give the instruction in substance.* The requested
instruction in the instant case was a correct application of the
law to the evidence.

The failure to so instruct constituted prejudicial error, entitling
defendant to a new trial.

*State v. Bradley*, 65 N.C. App. 359, 363, 309 S.E.2d 510, 513 (1983)
(citations omitted) (emphasis added). With curtilage being a legal
term and the statute and jury instruction emphasizing only defend-
ant's right to defend himself *within* his home or from an intruder
attempting to enter *into* his home, I believe the curtilage instruction
was necessary to apprize the jury of the applicable case law. "The rule
. . . that *a person is not obliged to retreat when he is assaulted* while
in his dwelling house or *within the curtilage thereof*," still prevails
and thus, the trial court was obligated to so instruct the jury. *State v.
Browning*, 28 N.C. App. 376, 379, 221 S.E.2d 375, 377 (1976) (empha-
sis added). Therefore, I am of the opinion defendant is entitled to a
new trial.