STATE OF NORTH CAROLINA v. LEE ISAAC BLUE

No. 304A01

(Filed 28 June 2002)

**Homicide— voluntary manslaughter—defense of habitation— porch part of dwelling—unlawful expression of opinion by trial court**

The trial court erred in a voluntary manslaughter case arising out of a deadly affray which took place on the porch of a dwelling by answering the jury's inquiry by instructing that a porch is not inside the home, because: (1) the trial court's answer expressed an opinion on the evidence, thereby invading the fact-finding province of the jury; (2) whether defendant was within the home or whether the victim was attempting or had made an unlawful entry into defendant's home were questions to be answered by the jury; and (3) the trial court's instruction was tantamount to instructing the jury that the porch could not as a matter of law be inside the home for purposes of the statutory defense of habitation under N.C.G.S. § 14-51.1.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 143 N.C. App. 478, 550 S.E.2d 6 (2001), finding no error in a judgment entered 16 September 1999 by Ellis, J., in Superior Court, Forsyth County. Heard in the Supreme Court 13 November 2001.

*Roy Cooper, Attorney General, by James P. Longest, Jr., Special Deputy Attorney General, for the State.*

*Donald K. Tisdale, Sr., and Christopher R. Clifton for defendant-appellant.*

PARKER, Justice.

Defendant was charged with second-degree murder for the stabbing death of James Hilton on 10 July 1998. A jury found defendant guilty of voluntary manslaughter, and the trial court sentenced defendant to a term of 77 to 102 months' imprisonment. In a split decision, the Court of Appeals' majority found no error. Defendant appealed to this Court based on the dissenting opinion; and for the reasons stated herein, we reverse the Court of Appeals and remand for a new trial.

For ease of presentation we address defendant's evidence first. At trial defendant's evidence tended to show that on a previous occasion Hilton had gone to defendant's residence with another man named Nudie. When the men parked in front of defendant's residence, Hilton was observed with a sawed-off shotgun. Both men exited the vehicle, but only Nudie entered the house to talk to defendant. In that conversation Nudie indicated to defendant, "If you start anything, my man on the porch out here gonna blow your head off." Hilton stood on the porch and looked in the screen door at some point. Defendant told Nudie to leave and that defendant did not want any trouble. Nudie and Hilton left.

On 10 July 1998, Hilton went back to defendant's home looking for Deidre Shuler. After being told that Shuler lived next door, Hilton left to find Shuler. Defendant saw Shuler and told Hilton, "There she is." Hilton and Shuler met in the yard and spoke to each other, and then Hilton came back onto defendant's front porch. Hilton "looked like he was mad at the world." While this was taking place, defendant's housemate, Spencer Wilson, was standing on the front porch. Defendant and Wilson told Hilton not to walk across their freshly planted grass. When he came up onto the porch, Hilton asked defendant, "Don't you remember me? I'm the one come to kill y'all." Thereafter, defendant and Hilton struggled on the front porch, and at some point the two went head first over the bannister. During the struggle, Hilton was stabbed. Once they landed on the ground, the two got up. Defendant went back up the steps and into the house. Hilton followed defendant up the steps and collapsed onto a couch on the porch.

The State presented the testimony of Shuler, which tended to show that Shuler and defendant had been drinking at defendant's house; that Shuler had gone back into her house to take a nap; that Shuler heard defendant hollering her name; and that when she walked out onto her porch, defendant yelled, "There that bitch is right there." Hilton went up the steps at the end of defendant's porch, defendant hit him, and the deadly struggle ensued. Shuler's assessment of the fight was that Hilton was getting the best of defendant.

The State also presented the testimony of Darweshi Wilson, who lived across the street. According to Wilson, he went out onto his front porch to smoke a cigarette and observed defendant and Hilton arguing on defendant's front porch, though he could not hear their tone. Wilson saw defendant strike Hilton in the face and saw defend-

ant make an uppercut motion with a knife. After the two went over the bannister, defendant made another striking motion with his fist. Wilson may have heard defendant tell Hilton to leave before defendant made the striking motion; Hilton did not do so.

The evidence is not in dispute that defendant and Hilton struggled on the front porch, that Hilton died of an uppercut stab wound, and that the knife belonged to defendant. The evidence is in dispute, however, as to which of the two combatants struck the first blow and where they were located when that blow was struck. According to defendant's testimony, he was just inside his screen door when Hilton pulled the door open and hit defendant in the face. Spencer Wilson testified that defendant was opening the screen door to go into the house when Hilton hit defendant from behind. State's witnesses Shuler and Darweshi Wilson both testified that defendant struck the first blow. Shuler testified that Hilton was going up the steps onto the porch when defendant struck him. Wilson testified that defendant and Hilton were arguing on the porch when defendant struck Hilton.

The evidence further showed that Hilton was thirty-four or thirty-five years old; that he was five feet, nine inches tall; and that he weighed 168 pounds. Hilton had a blood alcohol level of .12; and cocaine and cocaine metabolites were also present in his blood. According to the pathologist who performed the autopsy, the wound which caused the victim's death was unlikely to have been caused by a fall, but was consistent with an uppercut motion with a knife. Defendant was forty-six years old at the time of the incident, weighed 160 pounds, and was six feet tall.

At trial, the trial court instructed the jury on self-defense; second-degree murder; voluntary manslaughter; and, pursuant to N.C.G.S. § 14-51.1, defense of the home. In instructing on voluntary manslaughter, the trial court instructed as follows:

Voluntary manslaughter is also committed if the defendant kills in self defense but uses excessive force under the circumstances or was the aggressor without murderous intent in bringing on the fight in which the killing took place. The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self defense. However, if the State proves beyond a reasonable doubt that the defendant, though otherwise acting in self defense used excessive force or was the aggressor though he had no murderous intent when he entered the fight, the defendant would be guilty of voluntary manslaughter.

If the defendant was not the aggressor and he was on his own premises, he could stand his ground and repel force with force regardless of the character of the assault made upon him; however, the defendant would not be excused if he used excessive force.

After giving the summary mandates on second-degree murder and voluntary manslaughter, the trial court instructed on N.C.G.S. § 14-51.1 as follows:

If the defendant killed the victim to prevent forcible entry into his place of residence or to terminate the intruder's unlawful entry, the defendant's actions are excused and he is not guilty. The State has the burden of proving from the evidence beyond a reasonable doubt that the defendant did not act in a lawful defense of his home.

The defendant was justified in using deadly force if, (1) such force was being used to prevent a forcible entry into the defendant's place of residence; and (2) the defendant reasonably believed that the intruder might kill or inflict serious bodily harm to the defendant or others in the place of residence; and (3) the defendant reasonably believed that the degree of force he used was necessary to prevent a forcible entry into his place of residence.

A lawful occupant within a place of residence does not have the duty to retreat from an intruder in these circumstances. It is for you, the jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to the defendant at the time.

So I charge that if you find beyond a reasonable doubt that the defendant killed the victim, you may return a verdict of guilty only if the State has satisfied you beyond a reasonable doubt that the defendant did not act in the lawful defense of his home. That is, (1) the defendant did not use such force to prevent a forcible entry into the defendant's place of residence; or (2) the defendant did not reasonably believe that the intruder would kill or inflict serious bodily harm to the defendant or others in the place of residence; or (3) that the defendant did not reasonably believe that the degree of force he used was necessary to prevent a forcible entry into the defendant's residence. However, if you do not so find or have a reasonable doubt, then the defendant would be jus-

tified in defending his place of residence and it would be your duty to return a verdict of not guilty.

Shortly after retiring to deliberate, the jury requested a copy of the jury instructions and the charts the prosecutor had used in closing argument. The trial court advised the jurors that the charts were not in evidence and could not be taken to the jury room but that it would provide the jurors with a copy of the instructions. That afternoon the jury deliberated approximately three and one half hours with the exception of a short break and a brief interruption for instructions on a question. The next morning after deliberating for approximately two hours, the jury sent two questions to the trial judge. The first question read, "Is the front porch considered to be a part of the home or inside of the home?" The second question read, "Is excessive force one person with a weapon and one does not?"

After considerable discussion with counsel during which the trial judge reread the statute and made a diligent effort to locate any authority interpreting N.C.G.S. § 14-51.1, the trial court answered the questions as follows:

> Ladies and gentlemen, I've received two questions from you. The first question appears to have two parts. The first question is, "Is the front porch considered to be a part of the home" and a front porch is a part of the home. The next part of the question, "or inside the home." A front porch is not inside the home.
>
> The next question is, "Is excessive force one person with a weapon and one does not?" And the definition of excessive force is contained within the instructions which I have given to you and I'll read that portion to you again. "A defendant uses excessive force if he uses more force than reasonably appeared to him to be necessary at the time of the killing. It is for you, the jury, to determine the reasonableness of the force used by the defendant under all the circumstances as they appeared to him at the time." That is contained within the instructions that you have.

After taking the lunch recess, the jury resumed deliberations and returned a unanimous verdict approximately four and one half hours later.

In his brief to the Court of Appeals, defendant contended that the trial court erred in "responding to the jury's question as to whether a front porch is part of the house by overruling defense counsel's request that the court state that the same was curtilage and thus cov-

ered by the instructions of N.C.G.S. § [14-51.1]." Defendant argued that the curtilege was within the meaning of "home" and that the front porch and threshold are properly considered as the home and should be accorded the coverage of N.C.G.S. § 14-51.1. Defendant further contended that the trial court's response misled the jury, thereby resulting in prejudicial error. The Court of Appeals majority reviewed the instructions initially given and concluded that the "substance of the instructions read in context was clear" and that "the instruction included the curtilage in the area within which a defendant has the right to 'stand his ground.' " *State v. Blue*, 143 N.C. App. 478, 480, 481, 550 S.E.2d 6, 7, 8 (2001). The Court of Appeals further concluded that the trial court's answer that the "front porch is a part of the home" and that "a front porch is not inside the home" was sufficient when read in context in that the trial court instructed the jury "that when a person is on his own *premises* he has no duty to retreat." *Id.* at 481, 550 S.E.2d at 8. The Court of Appeals held that "[s]ince there was no instruction stating a circumstance where this defendant (a) had a duty to retreat or (b) was authorized to use force other tha[n] what was reasonably necessary to repel the assault, on this record we hold that further clarification was unnecessary." *Id.* The dissenting opinion stated that "because the trial court—at no time—explained the legal perimeters of one's home or mentioned defendant's right to defend himself within the curtilage of his home, . . . the majority has effectively removed from the jury's consideration defendant's right to defend himself on the porch of his home." *Id.* at 482, 550 S.E.2d at 8 (Hunter, J., dissenting). The dissent further opined that the jury most likely understood the law to require defendant to retreat on the porch of his home and that the trial court's response was prejudicial "because it did not clarify that the porch was part of the curtilage of the home and thus, was covered under N.C. Gen. Stat. § 14-51.1's self defense provisions." *Id.* at 483, 550 S.E.2d at 9 (Hunter, J., dissenting).

Before this Court defendant contends that the Court of Appeals erred in holding that the trial court did not commit prejudicial error in failing to instruct the jury, in response to its question, that defendant had the same rights pertaining to self-defense and defense of habitation on his front porch as he did within his home since the porch is part of the curtilage from which defendant had no duty to retreat.

The applicable statute for additional instructions after the jury has begun deliberations is N.C.G.S. § 15A-1234. The statute provides:

(a) After the jury retires for deliberation, the judge may give appropriate additional instruction to:

> (1) Respond to an inquiry of the jury made in open court; . . .

. . . .

(b) At any time the judge gives additional instructions, he may also give or repeat other instructions to avoid giving undue prominence to the additional instructions.

(c) Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard. . . .

(d) All additional instructions must be given in open court and must be made a part of the record.

N.C.G.S. § 15A-1234 (2001).

Further, in giving jury instructions, the trial court is not "required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C.G.S. § 15A-1232 (2001). We note that when N.C.G.S. § 15A-1232 was enacted in 1977, N.C.G.S. § 1-180, which required the trial court to summarize the evidence and explain the application of the law to the facts, was repealed. Act of June 23, 1977, ch. 711, sec. 33, 1977 N.C. Sess. Laws 853, 899. As originally enacted, N.C.G.S. § 15A-1232 also required the trial court to summarize the evidence to the extent necessary to explain the application of the law to the evidence; however, in 1985 the statute was amended to its present form, which specifically states that the trial court shall not be required "to explain the application of the law to the evidence." Act of July 1, 1985, ch. 537, sec. 1, 1985 N.C. Sess. Laws 608, 608. This statute does not, however, relieve the trial court of its "burden of 'declar[ing] and explain[ing] the law arising on the evidence relating to each substantial feature of the case.' " *State v. Moore*, 339 N.C. 456, 464, 451 S.E.2d 232, 236 (1994) (quoting *State v. Everette*, 284 N.C. 81, 87, 199 S.E.2d 462, 467 (1973)).

This Court has not previously interpreted N.C.G.S. § 14-51.1, which is entitled "Use of deadly physical force against an intruder" and provides as follows:

(a) A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant

reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.

(b) A lawful occupant within a home or other place of residence does not have a duty to retreat from an intruder in the circumstances described in this section.

(c) This section is not intended to repeal, expand, or limit any other defense that may exist under the common law.

N.C.G.S. § 14-51.1 (2001).

The common law right of an individual to defend himself from death or bodily harm on his premises was stated in *State v. Johnson*:

Ordinarily, when a person who is free from fault in bringing on a difficulty [] is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm. This, of course, would not excuse the defendant if he used excessive force in repelling the attack and overcoming his adversary. *State v. Francis*, 252 N.C. 57, 112 S.E.2d 756 [(1960)]; *State v. Frizzelle*, 243 N.C. 49, 89 S.E.2d 725 [(1955)].

*State v. Johnson*, 261 N.C. 727, 729-30, 136 S.E.2d 84, 86 (1964) (per curiam). Further, defense of the person within one's premises includes not only the dwelling, but also the curtilage and buildings within the curtilage. *Frizzelle*, 243 N.C. at 51, 89 S.E.2d at 726. The curtilage includes the yard around the dwelling and the area occupied by barns, cribs, and other outbuildings. *Id.*

The common law defense of habitation was stated thusly in *State v. Miller*:

When a trespasser enters upon a man's premises, makes an assault upon his dwelling, and attempts to force an entrance into his house in a manner such as would lead a reasonably prudent man to believe that the intruder intends to commit a felony or to

inflict some serious personal injury upon the inmates, a lawful occupant of the dwelling may legally prevent the entry, even by the taking of the life of the intruder. Under those circumstances, "the law does not require such householder to flee or to remain in his house until his assailant is upon him, but he may open his door and shoot his assailant, if such course is apparently necessary for the protection of himself or family. . . . But the jury must be the judge of the reasonableness of defendant's apprehension." A householder will not, however, be excused if he employs excessive force in repelling the attack, whether it be upon his person or upon his habitation.

*State v. Miller*, 267 N.C. 409, 411, 148 S.E.2d 279, 281 (1966) (quoting with approval *State v. Gray*, 162 N.C. 608, 610-11, 77 S.E. 833, 834 (1913)) (citations omitted) (alteration in original).

In *State v. McCombs*, 297 N.C. 151, 253 S.E.2d 906 (1979), this Court made several observations about the defense of habitation. The Court noted that

the use of deadly force in defense of the habitation is justified only to *prevent* a forcible entry into the habitation under such circumstances (e.g., attempted entry accompanied by threats) that the occupant reasonably apprehends death or great bodily harm to himself or other occupants at the hands of the assailant or believes that the assailant intends to commit a felony.

*Id.* at 156-57, 253 S.E.2d at 910. However, "[o]nce the assailant has gained entry, . . . the usual rules of self-defense replace the rules governing defense of habitation, with the exception that there is no duty to retreat." *Id.* at 157, 253 S.E.2d at 910. The rationale for this distinction is that once the occupant is face-to-face with the assailant, the occupant is better able to ascertain whether the assailant intends to commit a felony or has the means to inflict serious injury. *Id.* The Court, after discussing several cases, then stated:

The previously cited cases dealing with defense of habitation are factually limited to the *prevention* of a forcible entry. Moreover, the rules governing defense of habitation, self-defense, defense of property, and eviction of trespassers are designed to allow an individual to defend his family, home and property in virtually any situation which might arise with respect to an invasion of his home while at the same time affording maximum protection of human life. To allow the distinctions between these rules to

become blurred or to extend any of them to situations for which they were not intended would dilute the safeguards designed to protect human life.

*Id.* at 158, 253 S.E.2d at 911. Finally, the Court noted, without explanation, that an instruction on defense of habitation would be more favorable than would an instruction on self-defense. *Id.*

Hence, the principal distinction between the common law defense of habitation and the defense of the person on or within one's own premises is that in the former, the victim is attempting to forcibly enter the defendant's dwelling; whereas, in the latter, the victim has actually attacked or assaulted the defendant in the defendant's dwelling or on the defendant's premises. *Id.* at 156-57, 253 S.E.2d at 910. In neither case is the defendant required to retreat. The legal effect of the difference between the defenses is that under the defense of habitation, the defendant's use of force, even deadly force, before being physically attacked would be justified to prevent the victim's entry provided that the defendant's apprehension that he was about to be subjected to serious bodily harm or that the occupants of the home were about to be seriously harmed or killed was reasonable and further provided that the force used was not excessive. Whereas, under the defense of the person on one's premises, the defendant would have the benefit of perfect self-defense[1] and no duty to retreat

---

1. The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981). However, if the defendant satisfies the first two elements but,

although without murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant under those circumstances has only the *imperfect right of self-defense*, having lost the benefit of perfect self-defense, and is guilty at least of voluntary manslaughter.

*Id.* at 530, 279 S.E.2d at 573.

only if the defendant had first been attacked or assaulted. Prior to passage of N.C.G.S. § 14-51.1, once the victim was inside the defendant's home, the defendant would have the benefit of perfect self-defense only if the victim made the initial attack or assault on the defendant, though the defendant would have no duty to retreat, *see id.* at 158-59, 253 S.E.2d at 911; however, if the defendant made the initial attack or assault, the defendant would be entitled only to imperfect self-defense and would be guilty at least of voluntary manslaughter, *see id.* The limitation that defendant be acting to prevent forcible entry into the home for the defense of habitation to be applicable was eliminated by N.C.G.S. § 14-51.1. In enacting N.C.G.S. § 14-51.1, the General Assembly broadened the defense of habitation to make the use of deadly force justifiable whether to *prevent* unlawful entry into the home or to *terminate* an unlawful entry by an intruder. N.C.G.S. § 14-51.1.

The determinative question, then, in this case is whether the statutory defense of habitation is applicable to a deadly affray which takes place on the porch of a dwelling. Given the historical underpinnings of the defense of habitation that a person's home is his castle, *see Gray*, 162 N.C. at 613, 77 S.E. at 834, we discern no reason why the statutory defense of habitation should not be applicable to the porch of a dwelling under certain circumstances. A porch is an appurtenance to the home. Depending upon the size of the porch and weather conditions, the occupants of a home may engage in many of the same activities on the porch that they enjoy in the more protected areas during cold or inclement weather, such as eating, reading, sleeping, entertaining, and relaxing. In short, the functional use of a porch may not differ significantly from that of the interior of the living quarters. However, porches vary in description and usefulness from large, screened-in porches to small, uncovered stoops. For this reason whether a porch, deck, garage, or other appurtenance attached to a dwelling is within the home or residence for purposes of N.C.G.S. § 14-51.1 is a question of fact best left for the jury's determination based on the evidence presented at trial.

In the instant case the trial court answered the jury's inquiry by instructing that "[a] porch is not inside the home." This answer, although made in a sincere effort to give guidance to the jury, unfortunately expressed an opinion on the evidence, thereby invading the fact-finding province of the jury. *See State v. Wilson*, 354 N.C. 493, 510, 556 S.E.2d 272, 284 (2001) (holding that "[a] trial judge 'may not express during any stage of the trial, any opinion in the presence of

the jury on any question of fact to be decided by the jury' " and that how that opinion was conveyed to the jury is irrelevant) (quoting N.C.G.S. § 15A-1222 (1999)). Whether defendant was within the home or whether Hilton was attempting or had made an unlawful entry into defendant's home were questions to be answered by the jury. The judge's telling the jury that "[a] porch is not inside the home" was tantamount to instructing the jury that the porch could not as a matter of law be inside the home for purposes of N.C.G.S. § 14-51.1. The evidence was undisputed that Hilton went, uninvited, onto defendant's porch. Although the evidence was in conflict as to whether the victim opened the front door and as to who struck the first blow, the uncontradicted evidence was that the affray took place on the porch.

By convicting defendant of voluntary manslaughter, the jury, under the instructions given, necessarily found (i) that defendant was the aggressor without murderous intent; and/or (ii) that defendant, even if not the aggressor, used excessive force. We, of course, can only speculate as to what the jury found or what concerned the jury in asking its question. However, given the evidence, we cannot say as a matter of law that had the jury not been instructed that "[a] porch is not inside the home," the jury would not possibly have found defendant not guilty. See N.C.G.S. § 15A-1443(a). If the jury had been told that whether the porch was inside the home or part of the home was a question of fact for it to determine based upon the evidence, the jury could have determined that defendant met each of the conditions required under N.C.G.S. § 14-51.1 even if defendant struck the first blow and was, thus, not guilty. However, having been instructed that the porch was not inside the home, if the jury determined that Hilton did not open the front door and that defendant was the attacker, the statutory defense of habitation would not be applicable; and under the other two defensive theories upon which it was instructed, the jury could not have acquitted defendant.

For the foregoing reasons, we reverse the decision of the Court of Appeals and remand the case to that court for further remand to the Superior Court, Forsyth County, for a new trial.

REVERSED.