JOHN P. LEWIS, ADMINISTRATOR OF THE ESTATE OF HENRY GORDON LAW. DECEASED, v. GABRIEL WATSON, AND TROY WHITEHEAD MACHINERY COMPANY, INCORPORATED.

(Filed 28 April, 1948.)

**1. Trial § 31b—**

G. S., 1-180, requires the trial court to instruct the jury as to the law upon all substantial features of the case without request for special instructions, and a general statement of the law is not sufficient, but the court must explain the law as it relates to the various aspects of the evidence adduced and to the particular issues involved.

**2. Automobiles § 18i—**

A charge which fails to define careless and reckless driving or explain what constitutes a proper lookout in relation to the evidence adduced at the trial is insufficient to meet the requirements of G. S., 1-180.

**3. Same—**

The mere reading of the statutory speed regulations, G. S., 20-141, without separating the irrelevant provisions from those pertinent to the evi-

LEWIS v. WATSON.

dence and without application of the relevant provisions to the evidence adduced, *is held* insufficient to meet the requirements of G. S., 1-180.

**4. Same—**

The evidence disclosed that intestate was pushing a handcart on the right side of the highway, and that he was struck from the rear by defendant's vehicle traveling in the same direction. Plaintiff contended that the handcart was a vehicle and that G. S., 20-146, and G. S., 20-149, applied. Defendant contended that intestate was a pedestrian and was required by G. S., 20-174 (d), to push the handcart along the extreme left-hand side of the highway. *Held:* An instruction failing to define intestate's *status* and explain the law arising upon the evidence fails to meet the requirements of G. S., 1-180.

**5. Automobiles § 16—**

A person pushing a handcart along the highway is a pedestrian, since a handcart, being propelled solely by human power, is not a vehicle as defined by G. S., 20-38 (ff).

**6. Same: Automobiles § 18h (3)—Motorist is under duty to use due care to avoid striking pedestrian even though pedestrian is on wrong side of highway.**

The evidence disclosed that intestate was pushing his handcart on the right-hand side of the highway in violation of G. S., 20-174 (d), and was struck from the rear by a vehicle traveling in the same direction. Plaintiff's evidence was to the effect that the operator of the vehicle was traveling at excessive speed and failed to keep a proper lookout. *Held:* The fact that intestate was traveling on the wrong side of the road did not render him guilty of contributory negligence as a matter of law upon the evidence, since the operator of a vehicle is under duty notwithstanding the provisions of G. S., 20-174 (d), to exercise due care to avoid colliding with any pedestrian upon the highway. G. S., 20-174 (e).

APPEAL by plaintiff from *Patton, Special Judge,* and a jury, at the October Term, 1947, of MECKLENBURG.

This is a civil action in which the plaintiff, John P. Lewis, Administrator, seeks to recover damages of the defendant for the death of his intestate, Henry Gordon Law, upon a complaint alleging that such death was proximately caused by the negligence of the defendant, Garriel Watson, while operating a truck tractor on the business of his employer, the corporate defendant, Troy Whitehead Machinery Company. The ownership of the truck tractor by Troy Whitehead Machinery Company and the agency of Garriel Watson for it were conceded by the defendants. They denied, however, that the plaintiff's intestate had suffered death on account of negligence on the part of Garriel Watson, and pleaded contributory negligence on the part of the deceased as an affirmative defense.

There was substantial disagreement in the evidence of the parties relating to the merits of the action. A few facts, however, were not in

dispute. United States Highway No. 29 runs westward from Charlotte to Gastonia. The plaintiff's intestate was walking westerly somewhere on his right-hand half of this road about a mile west of the limits of Charlotte on the afternoon of 25 November, 1946. Here he was overtaken and struck by the truck tractor owned by Troy Whitehead Machinery Company and driven by Garriel Watson. When the truck tractor came upon the decedent from the rear, it was proceeding west along its right side of the road. The highway was straight and practically level at this point, and was paved to a width of 36 feet. Before the collision in controversy, the State Highway and Public Works Commission had established four traffic lanes of equal widths upon this part of the highway by placing white lines on the pavement, and had assigned the two southern lanes to east-bound traffic and the two northern lanes to west-bound traffic.

When viewed most strongly in his favor, the plaintiff's evidence tended to establish the matters set out in this paragraph. The deceased was walking westerly along the extreme northern margin of the highway, pushing a handcart ahead. The truck tractor came up from his rear at a speed of 55 or 60 miles an hour. It was daylight, and there was nothing to prevent the driver of the truck tractor from seeing the intestate pushing his handcart in the same direction on the same side of the highway. Notwithstanding these facts, the driver of the truck tractor proceeded ahead without reducing his speed, or changing his course, or giving any warning of his approach, and ran down and killed the decedent.

The defendants introduced testimony, however, indicating that the truck tractor collided with the intestate under the conditions set forth in this paragraph. The accident happened about sunset when virtually a solid stream of motor vehicles was moving along each of the four traffic lanes on United States Highway No. 29. At that time the deceased was pushing his handcart westerly in the middle of the northern half of the highway between the two lines of motor vehicles proceeding westward along the two northern traffic lanes. The defendant, Garriel Watson, approached in the truck tractor, traveling west in the northernmost traffic lane at a speed not exceeding 25 miles an hour. He was following a passenger automobile. He had the truck tractor under control, and was keeping a diligent lookout ahead. But the plaintiff's intestate was hidden from his sight by intervening motor vehicles. When the truck tractor was a short distance away, the passenger car in its front unexpectedly swerved to the left and struck the deceased or his handcart, knocking the deceased into the path of the oncoming truck tractor and so close thereto that it was impossible for its driver to avoid hitting the deceased.

The court below submitted these three issues to the jury: (1) Was the plaintiff's intestate killed by the negligence of the defendants, as

alleged in the complaint? (2) If so, did the plaintiff's intestate, by his own negligence, contribute to his death, as alleged in the answer? (3) What amount, if any, is the plaintiff entitled to recover of the defendants?

The jury answered the first issue "No," and the court rendered judgment on this verdict exonerating the defendants from liability to the plaintiff. The plaintiff thereupon appealed.

*Smathers, Smathers & Carpenter, Landon H. Roberts, and Smathers & Meekins for plaintiff, appellant.*

*Tillett & Campbell and James B. Craighill for defendants, appellees.*

ERVIN, J.　G. S., 1-180, provides that the trial judge shall "state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon." By exceptions duly reserved to the charge, the plaintiff asserts that the court below did not perform the function devolving upon it under this statute.

The chief purpose of a charge is to aid the jury clearly to comprehend the case, and to arrive at a correct verdict. For this reason, this Court has consistently ruled that this statute imposes upon the trial judge the positive duty of instructing the jury as to the law upon all of the substantial features of the case. *Smith v. Kappas,* 219 N. C., 850, 15 S. E. (2d), 375; *Ryals v. Contracting Co.,* 219 N. C., 479, 14 S. E. (2d), 531; *Williams v. Coach Co.,* 197 N. C., 12, 147 S. E., 435; *Wilson v. Wilson,* 190 N. C., 819, 130 S. E., 834. If the mandatory requirements of the statute are not observed, "there can be no assurance that the verdict represents a finding by the jury under the law and the evidence presented." *Smith v. Kappas, supra.* A litigant does not waive his statutory right to have the judge charge the jury as to the law upon all of the substantial features of the case by failing to present requests for special instructions. *Smith v. Kappas, supra; Spencer v. Brown,* 214 N. C., 114, 198 S. E., 630. Moreover, the mandate of the statute is not met by a "statement of the general principles of law, without application to the specific facts involved in the issue." *Ryals v. Contracting Co., supra; Mack v. Marshall Field & Co.,* 218 N. C., 697, 12 S. E. (2d), 235; *Nichols v. Fibre Co.,* 190 N. C., 1, 128 S. E., 471. The judge must declare and explain the law "as it relates to the various aspects of the testimony offered." *Smith v. Kappas, supra.* By this it is meant that the statute requires the judge "to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved." 53 Am. Jur., Trial, section 509.

When the instructions given to the jury in the court below are scrutinized in the light of these principles, it is indisputably clear that the

trial judge failed to declare and explain the law arising upon the evidence given in this case, and that the exceptions of the plaintiff to the charge must be sustained. After stating to the jury with commendable accuracy the testimony offered by the parties and the contentions made by them thereon, the trial court defined actionable negligence and contributory negligence in most general terms, gave the rules as to the burden of proof on the several issues, instructed the jury as to the measure of damages in actions for wrongful death, and read to the jury without comment or explanation various statutes regulating the operation of motor vehicles on the public roads of the State. But the court overlooked entirely the statute pertaining to the correlative duties of motorists and pedestrians with respect to each other when using the public highways. G. S., 20-174. We will confine our specific observations to the charge as it relates to the only issue answered by the jury.

The plaintiff insisted at the trial that the defendant, Garriel Watson, drove the truck tractor on the highway at an excessive speed, and without keeping it under proper control, and without maintaining a reasonably careful lookout ahead, and thereby proximately caused his intestate's death, and that by reason thereof the first issue ought to be answered in the affirmative. When the trial court undertook to apply the law to the facts upon the first issue, it charged the jury as follows: "If you find from the evidence and by its greater weight that the defendant, Garriel Watson, failed to keep a careful and proper lookout for persons, property, or obstructions on the highway, or operated the truck-tractor at an excessive rate of speed, or in a careless and reckless manner, and you further find from the evidence and by its greater weight that the acts, omissions, and conduct of the defendant, Garriel Watson, complained of, were the proximate cause of plaintiff's intestate's injuries, which resulted in his death, then it would be your duty to answer the first issue YES. If you fail to so find, it would be your duty to answer the first issue NO."

Upon its face, this instruction appears to embody a correct proposition. An analysis of the charge in its entirety, however, discloses that this is not true. The vice of this excerpt and of the charge as a whole as it relates to the first issue lies in the inadvertent omission of the court to call the attention of the twelve jurors unfamiliar with legal standards to what was necessary to guide them to a right decision on the issue. The charge gave no explanation as to what constitutes careless and reckless driving in the eyes of the law, or as to when a motorist is keeping a proper lookout in legal contemplation. The jury was left to decide these matters according to its own notions.

The trial court read to the jury *verbatim* and without any comment the first 41 lines of the highly complicated statute relating to speed restrictions on motor vehicles set out in G. S., 20-141. Outside of this, no

step was taken to explain to the jury what constitutes "excessive speed" in a legal sense. The mere reading of this statute was more likely to confuse the jury than to enlighten it. It is here suggested simply by way of illustration that it is not conceivable that the cursory reading of this statute in the hearing of the jurors gave them any idea whatever as to the meaning of the provision making speed in excess of a specified number of miles per hour in certain districts *"prima facie* evidence" of unreasonable and imprudent speed. Manifestly, the pertinent provisions of this intricate statute should have been separated from its irrelevant parts, and the jury should have been instructed as to the bearing such provisions had on the case.

We are constrained to hold that it is error for a trial court to read a statute to the jury without giving an explanation thereof in connection with the evidence where such explanation is patently necessary to inform the jury as to the meaning of the statute and as to its bearing on the case. *Presley v. Actus Coal Co.,* 172 Ark., 498, 289 S. W., 474; *Stansfield v. Wood,* 231 Ill. App., 586.

The legal battle between the parties in the court below centered chiefly around diverse contentions with respect to where the rules of the road required the plaintiff's intestate to push his handcart along the highway. The trial court gave the jury no instruction as to the law upon this question, but permitted it to determine the same according to its own ideas. In so doing, the court again failed to declare and explain the law as to a substantial feature of the case.

The conflicting contentions here considered had a direct relevancy to the first issue. The plaintiff insisted that the handcart was a vehicle within the purview of the statute governing the operation of motor vehicles on the public highways, and that by reason thereof his intestate was permitted and required by G. S., 20-146, to push it along the right side of the highway. The plaintiff further insisted that Watson, the driver of the truck tractor, overtook the intestate's handcart proceeding in the same direction along the highway; that Watson thereupon violated G. S., 20-149, by failing to drive the truck tractor at least two feet to the left of the handcart; that such violation of such statute by Watson proximately caused the death of the intestate, the operator of the handcart; and that by reason thereof the plaintiff was entitled to have the jury answer the first issue in the affirmative.

But the defendants contended that the plaintiff's intestate was traveling on foot; that his use of the handcart did not alter his status as a pedestrian; that he was required by G. S., 20-174 (d), to push his handcart along the extreme left-hand side of the highway; that he violated this statute by pushing his handcart along the right half of the highway; that such violation of the statute by the intestate was the sole proximate

cause of his death; and that by reason thereof the defendants were entitled to have the first issue answered in the negative.

The problem presented by these differing contentions finds a ready answer in that part of G. S., 20-38 (ff), which specifies that the word "vehicle" when used in the Motor Vehicle Act embraces "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power." As the deceased's handcart was moved solely by human power, this statutory definition clearly excluded it from the category of vehicles.

We conclude that a person walking along a public highway pushing a handcart is a pedestrian within the purview of the statutes governing the conduct of pedestrians on public highways, and is not a driver of a vehicle within the meaning of the statutes regulating the conduct of drivers of vehicles on such highways. This holding harmonizes with the decisions in other states where the like question has been considered. *Flaumer v. Samuels*, 4 Wash. (2d), 609, 104 P. (2d), 484; *Gallardo v. Luke*, 33 Cal. App. (2d), 230, 91 P. (2d), 211.

It follows that it was the duty of the plaintiff's intestate to push his handcart along the extreme left-hand side of the highway facing the automobile traffic coming on that side when he elected to travel on foot on the highway. G. S., 20-174 (d). The fact, however, that he was proceeding unlawfully on the wrong side of the road at the time he was stricken did not render him guilty of contributory negligence as a matter of law upon the record in the case at bar. Both the common law and the statute provide that notwithstanding the provisions of G. S., 20-174 (d), "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway." G. S., 20-174 (e); *Arnold v. Owens*, 78 F. (2d), 495. We hold that on the testimony adduced at the trial both the question of actionable negligence on the part of the defendants and the question of contributory negligence on the part of the deceased were for the jury. As the case must be tried anew, further discussion of the evidence is omitted.

For the reasons given in this opinion, the plaintiff is entitled to a new trial. It is so ordered.

New trial.