STATE OF NORTH CAROLINA v. ROBERT WILLIAMS, JR.

No. 134

(Filed 15 December 1971)

1. Homicide §§ 23, 24— instructions on presumptions arising in a homicide case — expression of opinion

   The instructions in a homicide prosecution, when considered in their totality, warranted a new trial for the following errors: (1) the trial court, in purporting to charge on the presumptions arising from the intentional use of a deadly weapon, failed to mention the intentional use of a deadly weapon; (2) the charge failed to indicate that the presumption of malice might be rebutted; (3) the trial court set out to charge on manslaughter but ended up by defining murder in the second degree; (4) the court, by inadvertently omitting the word "if," stated as a proven fact that the State had established the defendant's criminal negligence in stabbing the homicide victim.

2. Criminal Law § 111— purpose of the charge

   The chief purpose of a charge is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict.

3. Criminal Law § 158— conclusiveness of certified record

   The Supreme Court is bound by the record as certified and can judicially know only what appears of record.

APPEAL by defendant from *Bickett, J.,* 26 April 1971 Session of ORANGE Superior Court.

Defendant was charged by bill of indictment with murder. The State elected to seek a verdict of guilty of second degree murder or manslaughter.

The State's evidence tends to show the following:

William Aaron Crutchfield testified that he, Jerry Stroud (also known as Jerry Thompson), Rachel Davis, Alonzo Jennings, and defendant were in the parking lot in front of Mason's Grill and Grocery Store in Chapel Hill just before noon on 23 January 1971. While they were engaged in a conversation about purchasing some wine, defendant and Stroud began to talk in a loud manner. Officer Farrow of the Chapel Hill Police Department stopped and cautioned them about the excessive noise. Shortly after Officer Farrow drove off, defendant and Stroud began wrestling. After wrestling for a short time, defendant pulled out a knife. Stroud told defendant to quit playing with the knife. Then Stroud threw defendant to the ground. Defendant, still holding the knife, got up and moved towards Stroud, who raised both his hands above his head. Defendant walked up and "gigged" Stroud one time in the chest. Stroud said, "You cut me," and pulled out his knife. Stroud did not have a weapon of any sort in his hands before this. Stroud opened his knife and stepped towards defendant. Stroud stopped and closed his knife. By this time he was bleeding profusely from the wound in his chest.

Crutchfield, an employee of North Carolina Memorial Hospital, walked around defendant to Stroud and offered to take him to the hospital. Stroud collapsed on the way to Crutchfield's car. Crutchfield's efforts to revive Stroud were futile. While Crutchfield was assisting Stroud, defendant walked behind them, saying, "I didn't stab you." Defendant was the only one who could have inflicted the fatal wound.

Dr. David K. Wiecking testified that deceased died from a single stab wound which pierced his heart and caused a severe hemorrhage.

The State offered other witnesses whose testimony tended to corroborate the witness Aaron Crutchfield.

Defendant testified that he and Stroud were playing around and wrestling; and that both he and Stroud pulled out knives. Defendant slipped to the ground after grabbing Stroud. As defendant got up an old lady walked by and said, "Fellows, quit playing before one of you gets hurt." They quit playing and both closed their knives. As defendant was walking off, the old lady said, "The boy has been stabbed." Defendant turned around and

replied, "Jerry, I wouldn't stab you for nothing in the world." Defendant ran home. He voluntarily surrendered to the police after talking with his father.

The jury returned a verdict of guilty of voluntary manslaughter. Defendant appealed from judgment imposing prison sentence of seven to ten years.

This case is transferred for initial appellate review by the Supreme Court under an order made pursuant to G.S. 7A-31(b)(4).

*Attorney General Morgan and Assistant Attorney General Banks for the State.*

*Winston, Coleman and Bernholz, by Barry T. Winston, for defendant.*

BRANCH, Justice.

All of defendant's assignments of error are directed to the charge.

[1] Defendant contends that the court erred in instructing the jury as to second degree murder and manslaughter. In this connection, the trial judge instructed the jury:

> There is no evidence of malice in this case other than the presumption if you find from the evidence beyond a reasonable doubt that the Defendant intentionally inflicted the wound upon the deceased, Mr. Stroud, as he has been referred to here in the Bill of Indictment. Then, if you so find, that it proximally resulted, there is from no other cause, the death of Mr. Stroud, that the wound was intentionally inflicted by the Defendant, that raises the presumption that he is guilty of murder in the second degree.

The correct rule concerning the presumptions which arise in a homicide case are found in *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560. There the Court stated:

> If and when the State satisfied the jury from the evidence beyond a reasonable doubt that the defendant intentionally shot Taylor with a .38 pistol and thereby proximately caused Taylor's death, two presumptions arose: (1) that the killing was unlawful, and (2) that it was done

with malice. Nothing else appearing, the defendant would be guilty of murder in the second degree. *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *State v. Adams,* 241 N.C. 559, 85 S.E. 2d 918; *State v. Wagoner,* 249 N.C. 637, 107 S.E. 2d 83; *State v. Revis,* 253 N.C. 50, 116 S.E. 2d 171; *State v. Phillips,* 264 N.C. 508, 515, 142 S.E. 2d 337, 340; *State v. Price,* 271 N.C. 521, 525, 157 S.E. 2d 127, 129-130; *State v. Cooper,* 273 N.C. 51, 57, 159 S.E. 2d 305, 309.

Here the charge does not mention the intentional use of a deadly weapon. Nor are the presumptions which arise from the intentional use of a deadly weapon correctly stated. Further, nothing appears in this part of the charge which indicates that the presumption of malice might be rebutted. Thus, even a cursory examination of this portion of the charge reveals that it does not comply with the rule as correctly stated in *State v. Propst, supra.*

The court thereafter charged:

Now, manslaughter, ladies and gentlemen of the jury, as I have told you before, if you find from the evidence beyond a reasonable doubt that the defendant, Mr. Williams, intentionally inflicted the wound in the chest of the deceased, Jerry Stroud, and that it proximally resulted in death of Mr. Stroud, then he would be presumed to be guilty of murder in the second degree; . . .

The court set out to charge on manslaughter, but proceeded to give a definition of murder in the second degree.

Again, in discussing distinctions in homicides, the record shows:

[The presence in one case of premeditation and deliberation and the absence of the other, or one or both of these elements is the distinction different between murder in the first degree and murder in the second degree.]

To the above portion of the charge as set out in brackets, the Defendant excepts. DEFENDANT'S EXCEPTION No. 4.

[The presence of the one and the absence of the other element of malice is the distinction between murder in the second degree and manslaughter.]

[2] The chief purpose of a charge is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict. *State v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352; *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484.

Defendant further contends that the trial judge expressed opinions to the jury. In support of this contention defendant cites portions of the record which show the following:

> Criminal negligence is more than carelessness. The Defendant's act of criminal negligence, if it was done, was with recklessness or carelessness and showed a thoughtless disregard for consequences or heedless indifference for the safety and rights of others. That would be what is known in law as culpable negligence or criminal negligence . . . . and the State of course will further prove to you in both murder in the second degree and manslaughter that Jerry Stroud's death was a natural and probable result of the Defendant's act.

Defendant correctly contends that this portion of the charge amounted to a statement of opinion that, if the stabbing was done, an act of criminal negligence had been committed by defendant.

> In that connection, you are instructed, ladies and gentlemen of the jury, the State of North Carolina has satisfied you beyond a reasonable doubt that the Defendant, Mr. Robert Williams, Jr., unlawfully, willfully and feloniously, in a criminal and negligent way and the act was criminally negligent, reckless, and careless and showed total disregard for consequences or heedless indifference to the safety and rights of others and such act was done with a deadly weapon, as that term has been described to you, and you are further satisfied from the evidence that the deceased, Mr. Stroud's death was a natural and probable result of the Defendant's act, it would be your duty to return a verdict of involuntary manslaughter.

This part of the court's instructions omitted the single word "if." Undoubtedly this was an inadvertent omission. It resulted, however, in an expression of opinion by the court that the State had already shown that defendant's act was criminally negligent.

In the case of *State v. Kea*, 256 N.C. 492, 124 S.E. 2d 174, the trial judge charged "Manslaughter is the unlawful killing of a human being *with malice* . . . ." It was apparent that the trial judge intended to charge that "Manslaughter is the unlawful killing of a human being *without malice*." There the trial court in other places correctly charged as to this element of manslaughter; nevertheless, this Court held that such charge resulted in prejudicial error.

It is clear that some of the errors in this charge resulted from *lapsus linguae* on the part of the trial judge; however, in all fairness to this experienced trial judge, we feel compelled to observe that it is also apparant that many of the errors of omission and commission resulted from the taking and transcription of the record.

[3] This Court, however, is bound by the record as certified and can judicially know only what appears of record. *State v. Morgan*, 225 N.C. 549, 35 S.E. 2d 621; *State v. Winford*, 279 N.C. 58, 181 S.E. 2d 423.

We seriously doubt that any part of the charge as challenged by any one assignment of error would constitute prejudicial error; however, without attempting to discuss all assignments of error, we conclude that the total charge failed to clarify the material issues so as to aid the jury in reaching a verdict.

For reasons stated, there must be a

New trial.