INMAN, Judge.
 

 *435
 
 Joshua Earl Holloman ("Defendant") was convicted of assault with a deadly weapon inflicting serious injury. He appeals from a judgment entered 27 April 2015 that sentenced him to 25-42 months imprisonment but suspended the sentence, placing him on special probation.
 

 Defendant argues that the trial court's instruction on self-defense mislead the jury and inaccurately stated the law and that the trial court improperly considered its personal feelings during sentencing. After careful consideration, we hold that the trial court committed reversible error in its instructions. As a result, Defendant is entitled to a new trial.
 

 I. Background
 

 In the early morning hours of New Year's Day 2014, Mariah Mann ("Ms. Mann") contacted Defendant via cellphone, requesting that he drive and pick her up on the corner
 
 *330
 
 of Martin Luther King Boulevard and Rock Quarry Road in Raleigh. At that time Ms. Mann was with Darryl Bobbitt ("Mr. Bobbitt"). Defendant drove from Wendell to Raleigh and stopped in the middle of Martin Luther King Boulevard when he saw Ms. Mann and Mr. Bobbitt on the side of the road. Ms. Mann recognized Defendant's vehicle, a silver Lincoln, as he approached. Defendant, who was armed with a handgun, got out of his vehicle and during an exchange with Mr. Bobbitt shot him multiple times. Mr. Bobbitt, who also was armed with a handgun, fired shots at Defendant. Several accounts of the incident were presented at trial, each differing slightly.
 

 Mr. Bobbitt told police that Defendant got out of the car and asked "Did you put your hands on her?" Mr. Bobbitt said he could tell Defendant had a gun hidden behind his leg. Defendant then approached Mr. Bobbitt with the gun and fired multiple times. Mr. Bobbitt pulled his own gun out of his pocket and fired it twice. Mr. Bobbitt fell to the ground and Defendant continued to fire.
 

 Defendant testified as follows: When he arrived to pick up Ms. Mann, he saw Mr. Bobbitt following her. Defendant then got out of his car with his gun and told Ms. Mann to get in the car. Defendant noticed that Ms. Mann had blood on her face. Defendant asked Mr. Bobbitt if he had put his hands on her. Mr. Bobbitt turned his back on Defendant until Defendant stepped closer and asked again if Mr. Bobbitt had put his hands on Ms. Mann. Mr. Bobbitt then turned around and opened fire on Defendant. Defendant feared for his life when he shot Mr. Bobbitt. Defendant left the scene after Mr. Bobbitt fell to the ground.
 

 *436
 
 Ms. Mann testified that Defendant got out of the Lincoln and asked Mr. Bobbitt if he had put his hands on her. She told police that Mr. Bobbitt aimed a gun at defendant and Ms. Mann got into the Lincoln. She then heard gunshots.
 

 Anna Dajui was driving her fifteen-year-old daughter Roxana home from a party when she observed an "elegant," "black vehicle, like the kind a detective would drive" pull out in front of her onto Martin Luther King Boulevard and stop. She then saw the driver exit the "elegant" vehicle and shoot a pedestrian twice. Roxana, who was sitting in the back of the van her mother was driving, also saw the driver of a big car with rims stop in the middle of the road and shoot someone.
 

 By coincidence, Sergeant J.W. Bunch ("Sergeant Bunch") of the Raleigh Police Department was also present at the intersection when the shots were fired. He testified that he was around thirty yards away from the incident. He saw a light-colored Lincoln Town Car stopped in the road. The driver of the Lincoln stepped out around the front of the vehicle and confronted two pedestrians, a woman and a man. Sergeant Bunch then heard a loud verbal altercation, but had the windows of his police vehicle rolled up and could not understand the words that were being said. He saw the driver usher the woman into the passenger seat of the car. The driver then grabbed the male pedestrian with his left arm and shots were fired. The male pedestrian tried to run toward the back of the car and the driver followed him while firing his gun. Sergeant Bunch got out of his vehicle and saw the pedestrian on the ground and the driver standing over him, pointing a gun at him. Sergeant Bunch fired a shot, aiming high, but Defendant did not move. Sergeant Bunch fired two more shots and Defendant looked at him, yelled "Oh, shit," and ran away.
 

 Mr. Bobbitt was shot four times: twice in the stomach, once in the left leg, and once in the right arm. He had to undergo four surgeries and remained in the hospital for over a week. His right arm is permanently disabled as a result of his injuries.
 

 On 24 February 2014, Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury. The matter came on for trial on 20 April 2015. The jury found Defendant guilty of assault with a deadly weapon inflicting serious injury.
 

 II. Jury Instruction on Self-Defense
 

 Defendant argues that the trial court committed reversible error in its instruction on self-defense by suggesting that if Defendant initiated the altercation, he could not be
 
 *331
 
 found to have acted in self-defense. We agree.
 
 *437
 

 A. Appellate Jurisdiction and Standard of Review
 

 The State, citing
 
 State v. Wilkinson,
 

 344 N.C. 198
 
 , 236,
 
 474 S.E.2d 375
 
 , 396 (1996), contends that because Defendant requested a special instruction on self-defense deviating from the pattern instruction, any error by the trial court in this regard was invited error, which is not subject to appellate review. We disagree, because unlike the defendant in
 
 Wilkinson,
 
 Defendant here did not consent to the manner of instructions provided by the trial court. Rather, Defendant submitted a written request for an alternative special instruction on self-defense. His appeal is not barred.
 

 Because the trial court's instruction on self-defense differed from the instruction requested by Defendant, our standard of review is
 
 de novo,
 
 even though Defendant did not specifically object to the trial court's jury instructions before the jury retired to consider its verdict.
 
 State v. Smith,
 

 311 N.C. 287
 
 , 290,
 
 316 S.E.2d 73
 
 , 75 (1984) (A defendant who submitted a written request for particular jury instructions that the trial court denied was "not required ... to repeat his objection to the jury instructions, after the fact[ ] in order to properly preserve his exception for appellate review.");
 
 State v. Montgomery,
 

 331 N.C. 559
 
 , 570,
 
 417 S.E.2d 742
 
 , 748 (1992) ("The defendant's written request for a particular instruction ... met the requirements of Appellate Rule 10[ (a)(2) ] and constituted a sufficient objection to the different instruction actually given to preserve this issue for appellate review."). Here, as in
 
 Smith
 
 and
 
 Montgomery,
 
 the trial court gave a different instruction than those Defendant requested, and none of the portions of the challenged instruction were included in the instruction requested by Defendant.
 

 The standard of review for jury instructions is well established:
 

 On appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
 

 Hammel v. USF Dugan, Inc.,
 

 178 N.C.App. 344
 
 , 347,
 
 631 S.E.2d 174
 
 , 177 (2006) (citations and quotation marks omitted).
 

 *438
 

 B. Analysis
 

 The trial court's instruction deviated from North Carolina Pattern Jury Instruction 308.45 in certain respects, as explained below. The trial court was not required to follow the pattern instructions, so deviation is not
 
 per se
 
 error.
 

 [W]hile the use of pattern jury instructions is encouraged, it is not required, and failure to follow the pattern instructions does not automatically result in error because we do not require adherence to any particular form, as long as the trial court's instruction adequately explains each essential element of an offense.
 

 State v. McLean,
 

 211 N.C.App. 321
 
 , 328,
 
 712 S.E.2d 271
 
 , 277 (2011) (citation and quotation marks omitted).
 

 Defendant asserts that he was deprived of the right to fully present his defense because of the trial court's omission of an instruction to the jury that even an initial aggressor may be justified in using defensive force in certain circumstances. He further contends that the trial court's instruction that "[j]ustification for lawful self-defense is not present if the person who uses defensive force voluntarily enters into a fight with the intent to use deadly force" is an incomplete and thus inaccurate statement of the law. Defendant argues error and prejudice, because the trial court did not explain to jurors that a person who voluntarily enters a fight
 
 can
 
 regain justification for using defensive force under certain circumstances.
 

 *332
 
 In 2011, the General Assembly enacted a series of statutes related to self-defense and individual rights related to firearms.
 
 2011 N.C. Sess. Laws 1002
 
 (described in bill synopsis as "[a]n act to provide when a person may use defensive force and to amend various laws regarding the right to own, possess, or carry a firearm in North Carolina"). Among the new statutes added were N.C. Gen.Stat. § 14-51.3 (2015), entitled "Use of force in defense of person; relief from criminal or civil liability," and N.C. Gen.Stat. § 14-51.4 (2015), entitled "Justification for defensive force not available." Neither statute has been amended since it was enacted.
 

 Section 14-51.3 provides in pertinent part:
 

 (a) ... [A] person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if ...
 

 *439
 
 (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
 

 Section 14-51.4 provides in pertinent part:
 

 [J]ustification [for defensive force] is not available to a person ... who:
 

 (2) [i]nitially provokes the use of force against himself or herself. However, the person who initially provokes the use of force against himself or herself will be justified in using defensive force if either of the following occur:
 

 a. The force used by the person who was provoked is so serious that the person using defensive force reasonably believes that he or she was in imminent danger of death or serious bodily harm, the person using defensive force had no reasonable means to retreat, and the use of force which is likely to cause death or serious bodily harm to the person who was provoked was the only way to escape the danger.
 

 b. The person who used defensive force withdraws, in good faith, from physical contact with the person who was provoked, and indicates clearly that he or she desires to withdraw and terminate the use of force, but the person who was provoked continues or resumes the use of force.
 

 Prior to the 2011 legislation, the law of self-defense in North Carolina was largely governed by common law.
 
 [1]
 
 The new statute expressly provides that it "is not intended to repeal or limit any other defense that may exist under the common law." N.C. Gen.Stat. § 14-51.2(g) (2015).
 

 Witness accounts given at trial differed regarding whether Defendant or Mr. Bobbitt drew a gun first. Defendant testified that he did not know about Mr. Bobbitt's gun until Mr. Bobbitt fired at him. Defendant testified at trial and argues that the force used by Mr. Bobbitt against him was so
 
 *440
 
 serious as to lead Defendant to reasonably believe that he was in imminent danger of death or serious bodily harm, that he had no reasonable means to retreat, and that the use of force likely to cause death or serious bodily harm to Mr. Bobbitt was the only way to escape the danger, thus satisfying the requirements of N.C. Gen.Stat. § 14-51.4(2)(a).
 

 Defendant contends that the trial court erred in its self-defense instruction by omitting a key phrase and by changing the order of a portion of the pattern instruction which explained that under circumstances provided in N.C. Gen.Stat. § 14-51.4(2)(a) and supported by the evidence in this case, an aggressor may engage in lawful self-defense.
 

 The trial court instructed jurors that if they found that Defendant had assaulted Mr. Bobbitt with intent to cause death or serious injury, they would then have to consider whether Defendant's actions were excused because Defendant acted in lawful self-defense. The trial court instructed the jury,
 
 inter alia,
 
 as follows:
 

 A person is justified in using defensive force to defend himself when
 
 the force used against him
 
 is so serious that the person using defensive force reasonably believes that he is in imminent danger of death or serious bodily harm, the person using defensive
 
 *333
 
 force has no reasonable means to avoid the use of that force, and his use of force likely to cause death or serious bodily harm is the only way to escape the danger.
 

 (emphasis added). The phrase "the force used against him" in the trial court's instruction replaced the phrase "the force used by the person who was provoked" used in the pattern instruction. Defendant contends the omitted phrase was necessary to make it clear to the jury that this portion of the instruction referred to defensive force used by Defendant against "the person who was provoked" and not to defensive force used by Mr. Bobbitt.
 
 [2]
 
 The State contends that because both men claimed that the other fired first, their right to use defensive force was the same, so the
 
 *441
 
 trial court's instruction did not misstate the law. This argument misses the point of Defendant's appeal and demonstrates the likelihood that the instruction confused the jury. Although Mr. Bobbitt may have also had a right to use defensive force, Defendant-not Mr. Bobbitt-was on trial and it was a question for the jury, properly instructed, to answer.
 

 Defendant contends that the trial court compounded its error by reordering a significant portion of the self-defense instruction in a manner suggesting that because Defendant had initiated the fight, jurors could not under any circumstance find that he acted in self-defense. The trial court provided the explanation of lawful self-defense, quoted above, in the initial definition of self-defense. The pattern instruction, by contrast, provides this explanation later in a separate paragraph relating to the claim of self-defense by a defendant who was the aggressor.
 

 The trial court instructed jurors, consistent with the pattern instruction in the separate paragraph, that "self-defense is justified only if the defendant was not himself the aggressor." Because the trial court did not then instruct jurors that an aggressor may be justified in using defensive force against certain "force used by the person who was provoked," and because of the placement of that portion of the instruction-before, rather than after, the "aggressor" exclusion-Defendant contends that jurors were misled to believe that if they found Defendant had started the fight with Mr. Bobbitt, Defendant could not, under any circumstance, lawfully defend himself against Mr. Bobbitt, which is contrary to factors provided in Section 14-51.4(2)(a).
 

 The trial court also defined the term "aggressor" more narrowly than the pattern definition. The pattern instruction defines the "aggressor" as a person who "voluntarily entered into the fight or, in other words, initially provoked the use of force against himself," N.C.P.I.-Crim. 308.45 (2012), and immediately follows that definition with an explanation of the statutory circumstances in which an aggressor can lawfully defend himself. The trial court defined "aggressor" as a "person who uses defensive force [and] voluntarily enters into a fight with the intent to use deadly force." The trial court further explained:
 

 In other words, if one initially displays a firearm to his opponent, intending to engage in a fight and intending to use deadly force in that fight and provokes the use of deadly force against himself by an alleged victim, he is himself an aggressor and cannot claim he acted lawfully to defend himself.
 

 *442
 
 The trial court included this instruction in its substantive discussion of the felony charge of assault with a deadly weapon with intent to kill inflicting serious injury. The trial court did not repeat its discussion of self-defense in its subsequent instruction on the lesser felony charge of assault with a deadly weapon inflicting serious injury.
 

 The State appears to argue that the trial court's narrowed definition of "aggressor" as
 
 *334
 
 a person who acts "with the intent to use deadly force" insulated Defendant from any prejudice that could have resulted from the remainder of the self-defense instruction, because the jury by its verdict found that Defendant did not intend to kill Mr. Bobbitt.
 
 [3]
 
 The intent to kill, however, is not the same as the intent to use deadly force. A person who shoots another person with the intent to frighten, maim, injure, or with no specific intent does not intend to kill, but necessarily intends to use deadly force-a firearm.
 

 In the final mandate for both charges, the trial court instructed jurors as follows:
 

 I further instruct you that, even if you are satisfied beyond a reasonable doubt that the defendant committed either of the felony assaults with a deadly weapon which I have defined, you may return a verdict of guilty only if the State has satisfied you beyond a reasonable doubt that the defendant's action was not in lawful self-defense; that is, that the defendant did not reasonably believe that the assault was necessary or appeared to be necessary to protect the defendant from death or serious bodily injury, or that the defendant used excessive force, or that the defendant was the aggressor, as I have defined that term to you.
 

 The final mandate on self-defense was virtually identical to the pattern instruction. However, because the trial court's substantive explanation of self-defense eliminated references to circumstances in which an aggressor can lawfully defend himself, the mandate lends itself to the suggestion that if jurors determined Defendant had initiated the gun fight, they could not find that he acted in lawful self-defense, even if Mr. Bobbitt fired his gun first.
 

 The trial court's deviations from the pattern self-defense instruction, taken as a whole, misstated the law by suggesting that an aggressor
 
 *443
 
 cannot under any circumstances regain justification for using defensive force. Accordingly, the trial court erred.
 
 See generally
 

 State v. Williams,
 

 280 N.C. 132
 
 , 136,
 
 184 S.E.2d 875
 
 , 877 (1971) ("The chief purpose of a [jury] charge is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict.");
 
 Hammel,
 

 178 N.C.App. at 347
 
 ,
 
 631 S.E.2d at 177
 
 ("The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed.") (citations and quotation marks omitted).
 

 We further hold that there is a reasonable possibility that, had the jury been properly instructed on self-defense, jurors would not have convicted Defendant of assault.
 
 [4]
 

 The State argues that even if the trial court's instruction was incorrect, "[g]iven his willing participation in a gun fight and Mr. Bobbitt's resulting injuries, Defendant cannot show a reasonable probability that he would have been acquitted absent the alleged errors." We disagree.
 

 The State's argument is flawed in two ways. First, the State wrongly presumes that to establish prejudice, Defendant is required to show a "reasonable probability that he would have been acquitted" but for the trial court's erroneous instruction. The correct standard, codified in N.C. Gen.Stat. § 15A-1443(a), is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached."
 
 [5]
 
 N.C. Gen.Stat. 15A-1443(a) ;
 
 see, e.g.,
 

 State v. Ramos,
 

 363 N.C. 352
 
 , 355-56,
 
 678 S.E.2d 224
 
 , 227 (2009) ("reasonable possibility" of "different result" standard applied to determine that jury instruction was prejudicial and thus reversible);
 

 *335
 

 State v. Strickland,
 

 307 N.C. 274
 
 , 300,
 
 298 S.E.2d 645
 
 , 661 (1983),
 
 overruled on other grounds,
 

 State v. Johnson,
 

 317 N.C. 193
 
 , 203,
 
 344 S.E.2d 775
 
 , 781 (1986). Second, the State's argument, like the trial court's instruction, overlooks the statutory defenses provided to Defendant in Section 14-15.4. Based on the evidence viewed in the light most favorable to Defendant, we are persuaded that there is a reasonable possibility that if the trial court had not instructed jurors erroneously, the jury could have reached a different result.
 

 *444
 

 II. Statement by the Trial Court Regarding Personal Views
 

 Defendant asserts that the trial court erred when, during sentencing, it made comments demonstrating that it improperly considered certain personal feelings when sentencing defendant. Because we reverse Defendant's conviction and remand this matter for a new trial, and the trial court is not likely to repeat the comments, we need not address this issue.
 

 III. Conclusion
 

 For the foregoing reasons, we hold that the trial court prejudicially erred in instructing the jury on self-defense. Defendant is entitled to a new trial.
 

 NEW TRIAL.
 

 Judges GEER and TYSON concur.
 

 [1]
 

 A few statutes inapposite to this appeal were enacted before 2011.
 
 See, e.g.,
 
 N.C. Gen.Stat. § 14-51.1 (1993) (repealed by Sess. Laws 2011 ch. 268) (modifying the law of self-defense of one's home).
 

 [2]
 

 Defendant requested a variation on the pattern instruction that did not omit the phrase he contends was necessary. Defendant's request for special instruction was as follows:
 

 A person is also justified in using defensive force when the force used by the person who was provoked is so serious that the person using defensive force reasonably believes that he was in imminent danger of death or serious bodily harm, the person using defensive force had no reasonable means to retreat, and the use of force likely to cause death or serious bodily harm was the only way to escape the danger.
 

 [3]
 

 The State also argues that any error in the definition of "aggressor" was invited by Defendant, who also requested a special instruction referring to "the aggressor with the intent to kill or inflict serious bodily injury." As explained above, we reject that argument.
 

 [4]
 

 Defendant does not contend that the trial court's error violated his constitutional rights. Accordingly, Defendant bears the burden of showing prejudice.
 
 See
 
 N.C. Gen.Stat. § 15A-1443(a) (2015).
 

 [5]
 

 Defendant presumed the same wrong standard in his brief, citing only
 
 Williams,
 

 280 N.C. at 136
 
 ,
 
 184 S.E.2d at 877
 
 , which did not articulate a specific standard and pre-dated Section 15A-1443(a).