DAVIS, Judge.
Eduardo Jacob Castruita ("Defendant") appeals pursuant to N.C. Gen. Stat. § 15A-270.1 from an order denying his motion to locate and preserve evidence and for DNA testing. After careful review, we affirm.
Factual and Procedural Background
On 14 March 2011, Defendant pled guilty to first-degree kidnapping, robbery with a dangerous weapon, extortion, and conspiracy to commit kidnapping. On 30 December 2015, he filed, pro se , a handwritten document entitled "Motion to Locate and Preserve Evidences [sic] and Motion for Post-Conviction DNA Testing" in which he sought preservation of twenty items of evidence for purposes of DNA testing. He alleged that these items needed to be tested to prove that he did not perpetrate the offenses. He also contended that the North Carolina State Bureau of Investigation Crime Laboratory "did not present the results under proper examination of DNA Technology Polymerace or 'Touch DNA' " so as to "provide results that are significantly more accurate and probative of the identity of the perpetrator in which will [sic] exonerate the Defendant." Moreover, he sought the appointment of counsel pursuant to N.C. Gen. Stat. § 15A-269(c).
On 5 February 2016, the Honorable Stuart Albright entered an order denying the motion for DNA testing. The trial court found that Defendant failed to support with facts his conclusory allegations that testing of the evidence would exonerate him. By notice of appeal dated 10 February 2016 but not filed until 27 June 2016, Defendant attempted to appeal from the 5 February 2016 order. On 11 October 2016, Defendant filed a petition for writ of certiorari seeking review of the trial court's order in the event his notice of appeal was deemed to be defective.
Analysis
I. Appellate Jurisdiction
As an initial matter, we must determine whether we possess jurisdiction over the present appeal. The record reveals that Defendant's pro se written notice of appeal was not filed until well after the applicable deadline and therefore failed to comply with Rule 4 of the North Carolina Rules of Appellate Procedure. However, pursuant to Rule 21(a)(1) of the Appellate Rules, this Court may, in its discretion, grant a petition for writ of certiorari and review an order or judgment entered by the trial court "when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a)(1). Given that Defendant apparently attempted to give timely written notice of appeal but the notice of appeal was not actually filed by the clerk of court until months later, we exercise our discretion and allow the petition.
II. Anders v. California
Defendant's appointed counsel has filed a brief on his behalf in which he states that after examining the record along with relevant caselaw and statutes, he "is unable to identify an issue with sufficient merit to support a meaningful argument for relief on appeal." Counsel requests that this Court "fully examine the record on appeal for possible prejudicial error and ... determine whether counsel overlooked any meritorious issue" in accordance with Anders v. California , 386 U.S. 738, 18 L.Ed. 2d 493 (1967), and State v. Kinch, 314 N.C. 99, 331 S.E.2d 665 (1985). In compliance with Anders and Kinch , counsel submitted "points and authorities" to assist this Court in reviewing the record for issues that might support an appeal. Counsel attached to the brief a letter mailed to Defendant advising him of counsel's inability to find possible prejudicial error and of his right to file written arguments directly with this Court. Counsel attached to the letter a copy of the record on appeal and the brief filed by counsel.
Defendant filed his own pro se brief in which he states, in pertinent part, the following:
Defendant had known the co-defendant Judith Hernandez through his job at Dewey's Bakery in Winston-Salem, and Victor Casillas through a co-tenancy.
On the day of the offense, 7 April 2010, Defendant was at his apartment when he received a call from Judith Hernandez, asking him for assistance in repairing her car.
Judith picked Defendant up at his apartment at Twin City, Winston-Salem and took him to the motel, also in Winston-Salem, where her car had allegedly broke [sic] down. Upon arrival at the motel, co-defendant Judith invited Defendant into room number 15.
When Defendant entered the room, he was pushed by two men onto the bed where he was then hit with a metal object on the head and knocked unconscious. The men tied his hands behind his back and held [sic] at gunpoint.
Upon regaining consciousness, Defendant was told that he was to transport an individual who was lying on the other bed; tied up as well, to another location. Defendant refused and was hit and knocked out again.
When Defendant woke up the second time, he was able to identify the victim on the bed as a woman who was blindfolded, and a man who was asleep in a chair in the room.
Defendant was able to escape his bonds where he then quietly removed the blindfold from the victim and untied her. Defendant told the victim that he would help her but to remain very quiet. At that moment, Defendant heard someone approaching outside, so he covered [sic] victim with a sheet and again pleaded for her to remain very quiet, and to give the appearance that she was still tied up. Defendant then re-assumed his position on the other bed, also giving the appearance that he was still tied up.
Two men entered the room and took Defendant to a vehicle where they proceeded to drive off. Several minutes later, the driver received a phone call where he began yelling at the co-driver, telling him that the victim had escaped the motel.
At this point, the vehicle stopped and the two men dumped the Defendant onto the middle of the highway. Defendant immediately took out his cell phone and called a roommate to pick him up. Defendant was picked up and taken back to his apartment.
Defendant sought out his girlfriend Diana & went out to look for help when he was flagged down by Victor Casillas, whom Defendant recognized as one of the masked men at the motel.
Victor commanded the Defendant to drive him to his aunt's house, and that if he didn't comply, Defendant's family would be placed in danger.
In fear for his and his family's lives, Defendant drove Victor to his aunt's house near Highway 40 in Winston-Salem, but was stopped by police where the occupants were taken into custody and placed in Guilford County Detention Center. Both co-defendant's [sic] threatened Defendant and his family's lives should he implicate them of any crime.
Defendant also alleged in his pro se brief that the victim made a statement clearing him of any wrongdoing "in addition to the fact that Defendant aided the victim in her escape."
Defendant contends that the victim's cell phone and the rope and blindfold used to bind him and the victim should be preserved and tested. He contends that he made a sufficient showing of materiality obligating the court to appoint counsel, and that a reasonable probability exists that the "disclosure of test results ... would result in a different outcome in the jury's deliberations."
A defendant may move for post-conviction DNA testing of biological evidence if it (1) is material to the defense; (2) is related to the investigation or prosecution that resulted in the judgment; and (3) was not DNA tested previously, or if it was tested previously the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results. N.C. Gen. Stat. § 15A-269(a) (2015). The court must grant the motion if it determines that (1) all of the conditions above have been met; (2) if the requested DNA testing had been performed on the evidence, there is a reasonable probability that the verdict would have been more favorable to the defendant; and (3) the defendant signed a sworn affidavit of innocence. N.C. Gen. Stat. § 15A-269(b). The defendant bears the burden of showing that all of the conditions under N.C. Gen. Stat. § 15A-269(a) have been met. State v. Foster, 222 N.C. App. 199, 205, 729 S.E.2d 116, 120 (2012). Furthermore, "[i]f the [defendant] has filed pro se, the court shall appoint counsel ... upon a showing that the DNA testing may be material to the [defendant's] claim of wrongful conviction." N.C. Gen. Stat. § 15A-269(c).
We first note that Defendant's motion did not include any of the assertions concerning the events at issue that he now makes in his pro se brief. Moreover, he did not include any of the evidence presented to the trial court in the record on appeal. It is axiomatic that an appellate court "is bound by the record as certified and can judicially know only what appears of record." State v. Williams, 280 N.C. 132, 137, 184 S.E.2d 875, 878 (1971).
Even if we assume that this evidence was, in fact, presented to the trial court, we have held that generalized assertions that DNA evidence would prove the defendant's innocence are insufficient to prove materiality so as to require the court to appoint counsel and that the defendant must instead present specific reasons why the requested DNA test would be significantly more probative of the identity of the perpetrator or accomplice. State v. Cox , --- N.C. App. ----, ----, 781 S.E.2d 865, 869 (2016).
Defendant has failed to meet this standard. Defendant's account of these events places him at the scene of the crimes. DNA testing would, at most, corroborate Defendant's statement that he was at the scene; it would not exonerate him. Because Defendant failed to show materiality, he is not entitled to post-conviction DNA testing or appointment of counsel. Accordingly, the trial court properly denied Defendant's motions to locate and preserve evidence and for post-conviction DNA testing.
Conclusion
For the reasons stated above, we affirm the trial court's 5 February 2016 order.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and ZACHARY concur.